[Civ. No. 15853. Second Dist., Div. Three. Jan. 9, 1948.]

CALIFORNIA INTELLIGENCE BUREAU (a Corporation), Respondent, v. WARREN T. CUNNINGHAM, Appellant.

Frank M. Benedict for Appellant.

Joseph D. Taylor and Paul Taylor for Respondent.

VALLÉE, J. pro tem.—Appeal from a judgment enjoining defendant from engaging in unfair trade practices.

Plaintiff or its predecessor for more than 23 years has been engaged in a unique business in Los Angeles. According to the evidence, it is now and during the years has been the only concern engaged in a similar business in Los Angeles. The business consists in procuring, digesting and analyzing information concerning solicitations of funds for charity, for philanthropic, commercial or civic enterprises, benefits, campaigns, drives of all sorts, sales of tickets and advertising space by various organizations, particularly concerning those which canvass for funds in the name of charity, patriotism or civic pride. The information so acquired, after it is digested and analyzed, is distributed by bulletins to subscribers for the purpose of protecting them from false, fraudulent and unworthy promotion and solicitation. The subscriber pays plaintiff an annual fee for the service. The subscribers are generally persons, firms and corporations subject to the kind of solicitation described. Throughout the years plaintiff has accumulated a great amount of information with respect to the nature of such solicitations, the persons making them, those that are worthy and those that are not. Plaintiff also, at the request of a subscriber or upon employment by a nonsubscriber, investigates a particular institution, individual or periodical claiming to be of benefit to, or sponsored by, or devoted to, charitable, patriotic or civic endeavors. The information which is furnished to subscribers (also called customers and members), is confidential and is not published or distributed to others, except that at times it has been made available confidentially to interested government officials in the public interest. The subscribers receive a bulletin every 15 days, which is a digest and a report of most recently acquired information. An opinion as to the merits of a solicitation is rendered to a subscriber upon request as part of the service.

In October, 1944, plaintiff employed defendant as a solicitor of new subscribers. Plaintiff furnished defendant with an accumulation of bulletins previously sent to subscribers, reports on solicitations, questionnaires, applications for advertising, copies of letters, advertising literature and a complete list of plaintiff's subscribers. The bulletins given defendant went back about a year and a half and contained data theretofore furnished subscribers with respect to persons, firms and corporations that plaintiff had investigated. Plaintiff also gave

defendant a list of prospective subscribers and from time to time furnished him with new lists of subscribers to plaintiff's service. During the period of his employment defendant secured 125 new subscribers for plaintiff.

Defendant was discharged by plaintiff on April 20, 1945. At the time of his discharge defendant told plaintiff's president that he, defendant, would see to it that plaintiff would not renew 1 per cent of the accounts that defendant had sold and that he had more than one way to approach those members whom he had sold without committing slander; that he would see to it that the accounts he had sold were not renewed and that the life of those accounts would not be long. A short time later defendant told a former employee of plaintiff that he was unable to obtain a license for conducting investigations but that after all of the months of his connection with plaintiff he had accumulated quite a little information; that he had it in his head; that he was still getting plaintiff's reports from people whom he had sold.

On November 1, 1945, defendant set himself up in a competing business. For a short time he called himself "Merchant's Investigation Bureau," and thereafter "Merchant's Advertising Bureau." The business operated by defendant after November 1, 1945, was substantially the same type of business, operated in the same manner, as that of plaintiff. Within a short time after defendant began the competing business, about 84 of the persons whom defendant had obtained as subscribers to plaintiff's service cancelled their subscriptions. It may be inferred that these cancellations were the result of defendant's efforts. Defendant sold his service to about 80 of the persons who had cancelled.

In connection with the operation of its business, plaintiff furnishes its subscribers with a questionnaire, consisting of a list of questions. The subscriber is told to hand one of the questionnaires to a solicitor whenever he is solicited for funds and ask him to answer the questions on the questionnaire. The idea is to discourage unworthy solicitors upon the theory that a worthy one will fill out a questionnaire while an unworthy one will not. While in the employ of plaintiff, defendant secured one or more copies of plaintiff's questionnaire. After defendant began operation of his own business he prepared and distributed a similar questionnaire to his subscribers.

The trial court found the facts in accord with the foregoing statement. The court enjoined the defendant from (1) soliciting plaintiff's subscribers by use of any questionnaire contain-

ing questions designed to obtain from solicitors information as to whether the organization for which the solicitation is made is legitimate, (2) using plaintiff's compiled information, (3) soliciting plaintiff's subscribers for any service operated by defendant by use of plaintiff's secrets and confidential information, (4) divulging to defendant's subscribers any information of a confidential nature obtained while in the employment of plaintiff, (5) soliciting subscribers of plaintiff who were subscribers during defendant's employment by plaintiff to subscribe to any service similar to plaintiff's service, (6) using any questionnaire containing questions of like import to those contained in the questionnaire used by plaintiff.

Defendant makes four claims upon appeal. First, that the evidence is insufficient to support the findings in that there is no evidence that defendant has engaged in a business similar to that of plaintiff. Second, that if the evidence is sufficient to support the finding that defendant was engaged in a business similar to that of plaintiff that there is no evidence to support a claim that he engaged in unfair trade practices or competition. Third, that the decree is erroneous in enjoining the use of a questionnaire by defendant. Fourth, that the decree is too broad because it enjoins defendant from soliciting the customers of plaintiff regardless of whether or not they may have become such since defendant's employment terminated.

Appellant's first contention need receive but scant attention. The record contains abundant evidence that defendant, after termination of his employment with plaintiff, set himself up in a similar business and made use of the secrets and information that he had obtained while in the employ of plaintiff. In fact, defendant so admitted. He intentionally set out to injure plaintiff's business. He sold his service to customers he had obtained for plaintiff while employed by plaintiff. He admitted that he rendered his subscribers counsel and advice on advertising and various mediums. The nature of defendant's testimony was such that the trial judge was warranted in concluding that defendant was engaged in a business similar to and competing with plaintiff and that he used plaintiff's methods, confidential information and secrets in the operation thereof.

Appellant's next point depends for its determination upon whether the facts of this case, as found, bring it within the line of cases exemplified by *George* v. *Burdusis,* 21 Cal.2d

153 [130 P.2d 399], *Gloria Ice Cream etc. Co.* v. *Cowan,* 2 Cal.2d 460 [41 P.2d 340], *Scavengers P. Assn.* v. *Serv-U-Garbage Co.,* 218 Cal. 568 [24 P.2d 489], *Fidelity etc. Co.* v. *Federal etc. Co.,* 217 Cal. 307 [18 P.2d 950], *Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697 [275 P. 944, 276 P. 995], *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95 [130 P. 1180, Ann.Cas. 1914C 628, 44 L.R.A.N.S. 1159], *Riess* v. *Sanford,* 47 Cal.App.2d 244 [117 P.2d 694], and *Wallich* v. *Koren,* 80 Cal.App.2d 223 [181 P.2d 682], or whether the facts bring the case within the line of decisions illustrated by *Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104 [148 P.2d 9], *Theodore* v. *Williams,* 44 Cal.App. 34 [185 P. 1014], *Avocado Sales Co.* v. *Wyse,* 122 Cal.App. 627 [10 P.2d 485], and *Cohn* v. *Clare,* 6 Cal.App.2d 504 [44 P.2d 634].

In the first group of cases it is held that equity, at the instance of a former employer, will enjoin a former employee from using knowledge or information gained while in the employ of the former employer, and by reason of such employment, to the former employer's detriment, if: (1) the former employee is in possession of trade or business secrets or confidential information, or the like, not readily accessible to others; (2) the former employee solicits the customers of his former employer in a competing business with intent to injure his former employer's business; (3) the former employee solicits the customers of his former employer, who comprise a list of preferred customers whose trade is profitable to a supplier of a service, knowledge of whom is a trade secret and confidential; (4) one concern is usually patronized by a customer and the lists and names and addresses of the customers are considered secret and have the character of property; (5) there is an established business relationship between the customer and the former employer which, unless interfered with, normally continues.

In the second group of cases it is held that equity will not enjoin a former employee from using knowledge or information gained while in the employ of a former employer, and by reason of such employment, even to the detriment of the former employer, if: (1) the customers solicited (a) do not constitute a trade secret, or confidential information, or a confidential list in which a proprietary interest might be claimed, or (b) are commonly known to the trade and are called upon by salesmen for various companies, or are wholesale buyers whose names appear in directories and are so few in number

that anyone might readily discover them, and the list of them is not secret or confidential; (2) the former employer is in open competition with others engaged in similar business, selling in an open, competitive market; (3) the former employee was a salesman of his former employer in a commercial field where there was no assurance of an order unless he could satisfy his customer that his product was better, cheaper, or more salable than that of his competitor, where the customer usually desired to examine, inspect and compare the product and prices offered to him and each sale was a distinct transaction, not necessarily implying that another will follow; (4) no secret or trust reposed in the former employee in the course of his employment is violated and no trade or business secret or confidential information is used by the former employee.

Defendant contends that the facts of this case bring it within the second group of cases, while plaintiff contends that they bring it within the first group.

The fundamental difference in the decisions, as we read them, is whether in a given case the knowledge gained by an employee is secret and confidential. If it is, its use by a former employee will be enjoined. If it is not, its use by a former employee will not be enjoined. Some knowledge gained by an employee is of such a general character that equity will not restrict its later use. An employee has a right, after cessation of employment, to use anything that is not the property of his employer. Trade and business secrets and confidential information are the property of the employer and cannot be used by the employee for his own benefit. A list of subscribers of a service, built up by ingenuity, time, labor and expense of the owner over a period of many years is property of the employer, a part of the good will of his business and, in some instances, his entire business. Knowledge of such a list, acquired by an employee by reason of his employment, may not be used by the employee as his own property or to his employer's prejudice. It is this wrongful use by the former employee which constitutes an injury to the employer which equity will restrain. In *Continental Car-Na-Var Corp.* v. *Moseley*, 24 Cal.2d 104 [148 P.2d 9], one of the cases upon which appellant relies, it is noted that the use by an employee to the prejudice of his former employer of confidential information gained by the employee during his prior employment as to the business secrets of his employer is unfair competition and will be enjoined. The principle is statutory law

in this state. Labor Code, section 2860 provides: "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

In our opinion there can be no question but that the facts of this case bring it within the first group of cases listed *supra*. During the many years plaintiff has been in business it has acquired and retains a vast amount of information relative to those who solicit funds. It knows the worthy and the unworthy. It has developed superior methods of investigation of newcomers in the field. It has evolved methods of analyzing and digesting the results of its investigations. It tersely supplies its conclusions to its subscribers. From the exhibits it is apparent that such conclusions are of inestimable value to one solicited for funds. All of this, including plaintiff's list of subscribers, is a trade secret, confidential information, property of plaintiff. Plaintiff's list of customers is a preferred list, a list of persons, firms and corporations willing to pay for confidential, difficult to obtain, information about persons soliciting funds. Defendant, as we have said, gained knowledge of all these matters while in the employ of plaintiff and with intent to injure plaintiff's business, to his own profit, used the information in a competing business. The evidence warrants the conclusion that the acts of defendant were done in carrying out a preconceived plan to injure the business of plaintiff. Under the law, as stated in the first group of cases, defendant was properly enjoined.

Appellant's third and fourth points are, in part, well taken. The decree is too broad. It enjoins defendant from: (1) using any questionnaire "containing questions similar or of like import to questions contained in plaintiff's questionnaire," including "questions designed to obtain from solicitors information as to whether the organization for which solicitation is made is legitimate, charitable, philanthropic, commercial, civic or otherwise"; (2) soliciting subscribers of plaintiff's service under any circumstances, regardless of whether they may have become such since defendant's employment terminated. The questions asked in the two questionnaires are those which any sensible person would propound to a person, unknown to him, who came to him soliciting funds. There is nothing in the nature of the questionnaire which gave plaintiff

any property right therein. The use by defendant of the same or similar language in his questionnaire as that used by plaintiff in his does not constitute an unfair trade practice or unfair competition, except as he may use it in solicitation of persons who were subscribers of plaintiff during the period of defendant's employment by plaintiff. (Cf. *International Heat. Co.* v. *Oliver Oil Gas B. & M. Co.*, 8 Cir., 288 F. 708 [30 A.L.R. 611].) *Riess* v. *Sanford*, 47 Cal.App.2d 244 [117 P.2d 694], *Tuttle* v. *Buck*, 107 Minn. 145 [119 N.W. 946 [131 Am.St.Rep. 446, 16 Ann.Cas. 807, 22 L.R.A.N.S. 599], and other cases, cited by respondent, do not justify the decree in this respect. There is no basis in law for a decree restraining defendant from using a questionnaire containing questions similar or of like import to questions contained in plaintiff's questionnaire as long as defendant does not distribute such questionnaire to subscribers of plaintiff who were subscribers during the period of defendant's employment by plaintiff.

The provision of the decree enjoining defendant from soliciting subscribers to plaintiff's service who became such after the termination of defendant's employment so long as he does not use any of plaintiff's trade secrets or confidential information cannot be justified on any theory.

The judgment is modified as follows: Paragraph numbered "(1)" to read thus: "(1) Soliciting subscribers, customers and members of the plaintiff's service who were subscribers, customers, or members during defendant's employment by plaintiff by use of any questionnaire containing questions designed to obtain from solicitors information as to whether the organization for which solicitation is made is legitimate, charitable, commercial, civic, or otherwise"; paragraph numbered "(6)" is stricken therefrom. As thus modified the judgment is affirmed.

Shinn, Acting P. J., and Wood, J., concurred.