[Civ. No. 21792. Second Dist., Div. Three. Jan. 30, 1957.]

MATHEWS PAINT COMPANY (a Corporation), Appellant, v. SEASIDE PAINT AND LACQUER COMPANY (a Copartnership) et al., Respondents.

G. Harold Janeway and W. Alan Thody for Appellant.

Max Z. Wisot and Charles S. Litwin for Respondents.

SHINN, P. J.—The present action is against Harold Friedland and Bernard Paul Friedland doing business as Seaside Paint and Lacquer Company, Martin Goldflam and H. M. Rousselot, against whom an injunction is sought compelling the defendants to cease doing business with former customers of plaintiff. The complaint also seeks an accounting of profits derived by defendants from business done with plaintiff's former customers. Demurrers were sustained to plaintiff's second amended complaint with leave to amend; plaintiff declined to amend and the action was dismissed as to all defendants pursuant to the provisions of section 581, subdivision 3, Code of Civil Procedure.

The complaint contains two causes of action. The material allegations of the first cause of action are the following: Plaintiff has been engaged in the business of manufacturing and selling paints and lacquers for many years. Goldflam was in plaintiff's employ as a salesman, and Rousselot as a chemist, for about 22 years prior to May, 1955, when they left plaintiff's employment and entered the employment of

Seaside. Among plaintiff's former customers were 18 firms engaged in the manufacture of furniture, cabinets or fixtures and the finishing of such products. These firms are listed in the complaint. Goldflam and Rousselot, while in the employ of plaintiff, learned the names and addresses of plaintiff's customers who were being served by Goldflam as a lacquer specialty salesman, and he learned the individual and specific requirements and needs respecting the type and quality of lacquer products desired by the customers; he transmitted this information to Rousselot who would make and originate the products desired by lacquer customers. Due to this special service many of the customers developed a preference for plaintiff's products and purchased them consistently. This relationship was due to many years of satisfactory business dealings with plaintiff and the furnishing of products which met the needs of the customers. Plaintiff invested more than $30,000 in special equipment for the manufacture of lacquers and other products sold through the efforts of Goldflam and Rousselot and still maintains personnel to originate and develop paint and lacquer formulas adapted to meet the requirements of plaintiff's said customers for the products which were made under the formulas of Rousselot and were sold by Goldflam. It is alleged that the requirements of plaintiff's said customers as to the type, quality, specification and design of lacquers and paint products are peculiarly and exclusively within the knowledge and memory of said defendants. When Rousselot and Goldflam severed their employment with plaintiff they became employed by Seaside and became financially interested in Seaside's business, and they solicited and have continued to solicit plaintiff's former customers. Rousselot represented that plaintiff no longer had a competent lacquer chemist and that Seaside was able to supply products identical with those formerly furnished by plaintiff, and that he, Rousselot, was using the formulas formerly used by plaintiff. Both Rousselot and Goldflam have succeeded in taking away a large part of the business of plaintiff's former customers and will continue to do so. Plaintiff has at all times been able and willing to meet the requirements of its said former customers. It is alleged that defendants "labeled, numbered and otherwise identified products manufactured by Seaside Paint & Lacquer Company in such manner, and in such fashion that such products correspond in style, identifying number and appearance as the products manufactured by plaintiff" and they represent that products of Seaside "come from the same

origin and source as those products manufactured and sold by plaintiff.'' The second cause of action adds little to the first. It alleges that Goldflam learned and made available to Rousselot the particular lacquer needs and requirements of each customer and that this knowledge was not imparted to nor made available to any of plaintiff's other salesmen. It is alleged that plaintiff has been damaged in sums aggregating more than $80,000. The complaint prays for an injunction preventing defendants from selling to firms who were plaintiff's customers while Goldflam and Rousselot were in plaintiff's employ; for an accounting of all business done by defendants with said customers and for damages in the amount of profit plaintiff would have made had it supplied said customers with its own merchandise.

In *California Intelligence Bureau* v. *Cunningham,* 83 Cal. App.2d 197 [188 P.2d 303], an injunction against the former employes of the plaintiff was affirmed. On pages 201 and 202 of the opinion two groups of cases are listed, one, the so-called ''route cases,'' in which injunctive relief was held proper, and another group in which it was denied. To the ''route cases'' that are listed may be added *Cornish* v. *Dickey,* 172 Cal. 120 [155 P. 629]; *New Method Laundry Co.* v. *MacCann,* 174 Cal. 26 [161 P. 990, Ann.Cas. 1918C 1022]; *Mackechnie Bread Co.* v. *Huber,* 60 Cal.App. 539 [213 P. 285]; *Santa Monica Ice etc. Co.* v. *Rossier,* 42 Cal.App.2d 467 [109 P.2d 382], and *Langendorf United Bakeries* v. *Phillips,* 5 Cal.2d 150 [53 P.2d 363]. The opinion enumerates the features which cast a given case into one group or the other. Without repeating it we adopt what was said as to the basis for classification. The opinion proceeds (p. 203): ''The fundamental difference in the decisions, as we read them, is whether in a given case the knowledge gained by an employee is secret and confidential. If it is, its use by a former employee will be enjoined. If it is not, its use by a former employee will not be enjoined. Some knowledge gained by an employee is of such a general character that equity will not restrict its later use. An employee has a right, after cessation of employment, to use anything that is not the property of his employer. Trade and business secrets and confidential information are the property of the employer and cannot be used by the employee for his own benefit.'' This is the principle that controls in the instant case.

Our first inquiry is whether the complaint alleges that

plaintiff's former employes acquired trade and business information and knowledge that was not readily accessible to others. This could have consisted of knowledge of the use of secret formulas or methods of manufacture, or knowledge of a secret list of customers.

We consider first the allegations respecting the type and character of lacquer which plaintiff produces and sells to its customers. For many years its lacquers were manufactured under formulas known to and employed by Rousselot. ▮ It is not alleged that they were secret formulas or that plaintiff had any proprietary interest in them. In the absence of allegation of these facts it should be presumed that plaintiff had not been using formulas or methods other than those that were known and used generally throughout the trade. Defendants had a right to use the same formulas and methods.

The 18 customers listed in the complaint are for the most part manufacturers of furniture. A few are listed as furniture refinishers, upholsterers or as manufacturers whose specialties are not listed. It is obvious that they are purchasers of lacquer in wholesale quantities and that they are generally known in the business world as being engaged in their various businesses. They are firms who would be known to and recognized by producers of lacquers as potential customers. Such businesses are commonly listed in the classified telephone directories. It is not alleged that other producers of lacquer were not at all times competing with plaintiff for the sale of their products to the firms listed and to others in the same category. In other words, it is not alleged that among plaintiff's customers were any that were not equally well known to plaintiff's competitors as buyers at wholesale. Plaintiff's list of customers was not a secret one and it was not one in which plaintiff could have a proprietary interest. In all the cases we have read in which injunctive relief was granted against the use of customer lists, such lists were of retail customers in the category of bakery routes, laundry routes, ice routes, milk routes, etc., where not only the names and addresses were kept in route books for the use of drivers in a particular territory, but, as a rule, the books also contained information as to the days when the driver was to call, the nature and quantity of the goods usually required and other information which prepared the driver to render the particular type of services required by the many housewives who were his customers. The lists had been prepared after much inquiry and effort and they were in such form that if one driver quit

his employment another could take his place to carry on effectively the business of his employment in the particular district covered by the route. It has been held without exception that information that has been accumulated and compiled in this manner is the property of the employer and that any knowledge of the same possessed by the employe has been acquired in confidence which the employe is not at liberty to break.

The cases in which the courts have denied injunctive relief to prevent the use of customer lists by a former employe are considerably fewer in number than those in which relief has been granted. But the principles that are applicable are just as firmly established. If the customer list is not secret and confidential it is not the property of the employer. The rule is aptly stated in the headnote to *Avocado Sales Co. v. Wyse,* 122 Cal.App. 627 [10 P.2d 485], as follows: "An injunction will not be granted at the instance of one engaged in the business of selling avocados to retailers, such as grocery-stores, vegetable or fruit stands, clubs, hotels and cafes, to enjoin former employees, engaged in the same business, from soliciting business from such retailers to whom the former employer, through its former employees, sold avocados, where such retailers were solicited and sold to by other firms and individual sellers, and a list of such retailers cannot be said to constitute confidential information or a trade secret." The court aptly said: "In all of the California cases in which the injunction has been granted the customers were individuals being ultimate consumers of commodities or individual customers of laundry, bread, ice or milk concerns, and the lists of names and addresses were secret lists; but can a list of grocery-stores, vegetable or fruit stands, etc., where avocados are sold to the general public, where displays are made to attract the attention, be considered as anyone's private list? Can it constitute confidential information and a trade secret? Could not any salesman see at a glance where to attempt to sell his wares? Both the plaintiff and defendant are wholesale firms selling only to retailers and it is shown that these retailers are solicited by other firms and individual sellers. It is also generally known that the better class of hotels, cafes and clubs serve avocados. These people are not buying exclusively from one person or firm as in the cases heretofore before the court. It would be unusual for the people to patronize more than one laundryman, iceman or

milkman, allowing him to solicit at their doors. If the list, against which the plaintiff seeks to enjoin, is not confidential the plaintiff can have no proprietary interest therein. If the defendants had possessed no knowledge gained through their employment, would not the exercise of just ordinary perspicacity have sent them to these very places to solicit buyers? We think so." (Pp. 633-634.) A comparable case is *Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104 [148 P.2d 9], which reversed a judgment granting an injunction. The plaintiff was a producer and seller of compounds for the finishing, cleaning and treatment of floors and of tools and appliances for that purpose. The defendant had been employed by plaintiff for 22 months and he had prepared a card index containing information as to the name, address and purchases of each customer. He had no "route." When he left the plaintiff's employ there were between 500 and 600 of such cards. He copied between 250 and 300 of them and he later solicited these customers. As a reason for reversal of the judgment the court stated (p. 109): "Plaintiff had been in open competition with other floor wax manufacturers in the area for a number of years, and Moseley sold such products as he could in an open, competitive market. For this reason the list of customers could not be said to be a trade secret or to constitute 'confidential' information."

It is alleged that Rousselot and Goldflam became familiar with the requirements of plaintiff's customers "insofar as they relate to the type, quality, design and specification required by said customers." ▆▆ It is not alleged that there was anything secret about those requirements; so far as alleged, information concerning them could have been acquired by any of plaintiff's competitors and may have been as well known to the competitors as they were to plaintiff or Rousselot or Goldflam. And the competitors may have been as well prepared to fulfill the requirements of the customers as was the plaintiff. ▆▆ A salesman necessarily becomes somewhat acquainted with the particular requirements of his customers, but the knowledge that he obtains in this manner is not in and of itself confidential information which is the property of the employer. (*Continental Car-Na-Var Corp.* v. *Moseley, supra,* 24 Cal.2d 104, 111; *DeLuxe Box Lunch & Catering Co.* v. *Black,* 86 Cal.App.2d 434 [194 P.2d 715].)

In all the particulars we have discussed the complaint is deficient in its allegation of facts upon which a right to an

injunction is asserted. ■ Injunctive relief should be granted only upon convincing proof of a harmful violation of the plaintiff's rights, and the instances in which such rights are violated by an employe's misuse of information gained during his employment constitute an exceedingly small proportion of the whole. A salesman who leaves one employer has a right to enter the employment of a competitor. He necessarily is possessed of information gained in the earlier employment which will enable him to better succeed in later ones. The doctrine under which injunctive relief is granted should not be given application that would overemphasize the employer's right to the detriment of the employe by treating as confidential and secret all knowledge and information gained by the employe that might be of assistance to him and a later and competing employer. Here defendants Rousselot and Goldflam are accused of nothing except selling to former customers of plaintiff in a field that is known to and open to all competitors of plaintiff. This would have been the natural thing to do if they had been in the plaintiff's employ and yet had never learned the names and addresses of plaintiff's customers.

■ It is alleged that the defendants "have labeled, numbered and otherwise identified products manufactured by their present employer, defendant, Seaside, in such manner and such fashion that such products correspond in style, identifying number and appearance to the products manufactured by plaintiff. That defendants, and each of them, have represented to the public and to customers of plaintiff that the products sold by defendant, Seaside, come from the same origin and source as those products manufactured and sold by plaintiff." But it is not alleged that plaintiff has any property right in the labels, the numbering or other identifying appearance of its own products or that there is anything in the appearance of Seaside's products which would tend to deceive the public into the belief that they were plaintiff's products or which would otherwise constitute unfair competition. The representation by defendants that the products sold by Seaside come from the same origin and source as those products manufactured and sold by plaintiff is not alleged to be false in any particular. Plaintiff does not claim any exclusive right to develop lacquers or other products from any particular origin or source, and it is not alleged that the origin and source of plaintiff's products differ in

any respect from those that are common to the products of plaintiff's competitors.

Upon the facts alleged plaintiff was not entitled to an injunction.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.