[Civ. No. 9214. Third Dist. Mar. 24, 1958.]

VERNON R. FORTNA, Respondent, v. E. L. MARTIN, Appellant.

Steel & Arostegui for Appellant.

Bradford, Cross, Dahl & Hefner and Archie Hefner for Respondent.

SCHOTTKY, J.—This is an appeal from a judgment enjoining defendant, for a period of five years, from "entering into competition, directly or indirectly, with plaintiff . . . and/or soliciting structural pest control work, all in the exterminating business, Branch 3, Group D termite control work," in a specified area of the Sacramento Valley, and from "making use of confidential information or trade secrets of said plaintiff, . . . and in particular from making any disclosure whatsoever as to said plaintiff's methods of bidding for structural pest control work."

On December 21, 1953, defendant Martin and plaintiff Fortna entered into a contract of employment which contained the following provision:

"(c) That he [the employee] will not for a period of five years after the end or termination of his employment, irrespective of the time, manner or cause of the said termination, directly or indirectly, either as principal, agent, employee, employer, stockholder, co-partner, or in any other individual or representative capacity whatever, solicit, serve, or cater to or engage, assist, be interested in or connected with any other person, firm or corporation soliciting, serving or catering to any of the customers served by him or by any other employee of the company or any of its branches during his employment with the Company."

Martin continued in the employ of Fortna until August 30, 1955. During the last 30 days Martin made plans to engage in business for himself, and immediately after the termination of the employment he established his own business and entered into competition with Fortna.

Fortna then sought an injunction to prevent Martin from competing with him. Fortna alleged in his complaint that Martin had solicited customers, and that while in his (Fortna's) employ Martin became familiar with certain trade secrets and confidential information of the business, particularly the names of customers, the materials used and services performed in termite control work and other information pertaining to the conduct of Fortna's business, and that after Martin terminated the employment he had used the information to solicit business for himself.

The testimony disclosed that Martin had been in the termite control business for about 18 years and that at one time he had his own business in Los Angeles. Prior to the time Martin was employed by Fortna he had no contacts in the Sacramento Valley. Fortna described Martin as his manager. Martin made

inspections, reports, issued the reports to the proper persons, negotiated the work and handled it; he became familiar with Fortna's prices, his methods of bidding, and those persons with whom Fortna did business. Fortna was most careful never to allow his employees to learn the amount he received for any job, and the customer only was given a total bid price for any job. Fortna considered this information a trade secret and confidential. Martin testified that there was no difference in the prices charged by Fortna and those charged in Los Angeles.

Termite inspection is examining the substructure of a building and determining if there is damage and what is needed to correct it. To engage in the business one must have a license issued by the state of California. The biggest portion of the business comes from real estate companies and lending institutions, a termite clearance being required with many types of loans. When a clearance is needed either the realtor or the financial institution calls a termite inspection company to make the inspection. Fortna testified that he had many contacts who called only him. He stated that if work was necessary the bank or the real estate company would inform him to do the work without the necessity of a bid. He has a standard price formula that he uses. As stated, the estimates are presented to the customer as a lump sum figure, but anyone who has become familiar with Fortna's pricing method can determine how the estimate is arrived at. Fortna claimed that the identity of those customers who called only him, and his pricing methods are trade secrets and confidential information. He further stated that in some of the institutions there was one officer who controlled the business, and the identity of this officer could not be determined by the average solicitor. As a result of his employment, Martin learned the identity of the person who controlled the business in each institution. After Martin left Fortna's employ he called at the offices of these customers and left his card. He denied soliciting them but he did admit that he told them that if he could be of service to them he would. Since Martin left Fortna's employ certain old customers have not referred any business to Fortna.

Fortna claimed to have had only minor competition in the area served by his firm. There was a man by the name of Bechhold in Chico who worked out of his own home. He did not advertise and he had never bid against Fortna on a job. In 1954 a firm by the name of Garankill was established. Fortna testified this was only minor competition.

As grounds for reversal of the judgment appellant contends (1) that the contract is void as a contract in restraint of trade; (2) that the injunction exceeds the contract between the parties; (3) that the findings do not recite any information gained by appellant which constitutes a trade secret; and (4) that the evidence is insufficient to sustain the judgment.

We do not believe that the injunction can be based on the contractual provision hereinbefore set forth. Section 16600 of the Business and Professions Code provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." None of the exceptions is applicable to the instant case.

As stated in *Continental Car-Na-Var Corp.* v. *Moseley*, 24 Cal.2d 104, at page 110 [148 P.2d 9]:

"Equity will to the fullest extent protect the property rights of employers in their trade secrets and otherwise, but public policy and natural justice require that equity should also be solicitous for the right inherent in all people, not fettered by negative covenants upon their part to the contrary, to follow any of the common occupations of life. Every individual possesses as a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition is fairly and legally conducted. (*New Method Laundry Co.* v. *MacCann*, 174 Cal. 26, 33 [161 P. 990, Ann.Cas. 1918C 1022].)

"Under this salutary rule, the question then is whether defendants were guilty of unfair competition in soliciting the customers of plaintiff for business in competition with the latter. It is the law that equity will intervene to restrain an employee from divulging confidential information gained in the course of his employment or using such information to his employer's prejudice. (*Pasadena Ice Co.* v. *Reeder*, 206 Cal. 697, 702 [275 P. 944, 276 P. 995].) The courts regard as unfair competition, and will enjoin, the use by an employee to the prejudice of his former employer of the confidential information gained by the employee during his prior employment as to the business secrets of such employer." (See also *California Intelligence Bureau* v. *Cunningham*, 83 Cal.App.2d 197 [188 P.2d 303]; *Morris* v. *Harris*, 127 Cal.App.2d 476

[274 P.2d 22]; *Mathews Paint Co.* v. *Seaside Paint Co.*, 148 Cal.App.2d 168, 171 [306 P.2d 113]; *American Alloy Steel Corp.* v. *Ross*, 149 Cal.App.2d 215 [308 P.2d 494].)

 Whether or not equity will enjoin a former employee from using information acquired while in such employ to the disadvantage of the former employer depends on whether or not in a given case the information gained is secret and confidential. If it is, a former employee may not use it, but, if it is not, a former employee may do so. An employee may, after termination of the employment, use anything that is not the property of the employer. But the employee may not use for his own benefit trade and business secrets and confidential information which are the property of the employer. (*California Intelligence Bureau* v. *Cunningham*, 83 Cal.App.2d 197 [188 P.2d 303]; *Mathews* v. *Seaside Paint Co.*, *supra*.)

 We do not think that the evidence produced in this case disclosed the use of any information by Martin which can be considered to be a trade secret or confidential. The identity of Fortna's customers cannot be considered confidential. It is common knowledge that financial institutions require a termite clearance before they will make loans on improved property. It is also common knowledge that the average purchaser of real property must secure a loan in order to complete the purchase. Realtors usually inform prospective sellers of the necessity of a termite clearance. It follows that both realtors and financial institutions are often in a position to give termite inspection firms leads to business or to give them business. Certainly any person engaged in the business would consider both banks and real estate companies as potential sources of business and contact them. The names and addresses of such firms are found in the yellow pages of any telephone directory. Their identity cannot be confidential.

Nor do we think that even if there was one man in each firm who controlled the business, such information would be confidential. Any solicitor could ascertain who that person would be. While Fortna describes these men as key contacts of a secret nature, we cannot understand nor does the evidence disclose what the secret nature was.

The materials used and the services performed in termite control work cannot be confidential either. Each person who desires to engage in such a business must obtain a license from the state. Martin had a Group D license authorizing him to

engage in the practice relating to the control of wood destroying pests by the use of insecticides or structural repairs and corrections, excluding fumigation with poisonous or lethal gases. It is reasonable to conclude that Martin, having passed the examination necessary to obtain such a license, would be familiar with the materials used and the services performed in such work.

Fortna also claimed that his method of pricing and bidding were secret. The evidence does not show that Fortna devised any secret or improved method of making estimates or computing costs. At most, the evidence discloses that Fortna utilized a system which considered his costs, but any successful business man must do the same. ■ A former agent may use, after the termination of his employment, ''methods of doing business and processes which are but skillful variation of general processes known to the particular trade.'' (Rest., Agency, § 396, comment, cl. (b).) The mere fact that Fortna did not disclose the information to other employees would not make it secret and confidential.

■ Injunctive relief should be granted only upon convincing proof of a harmful violation of the plaintiff's right. It should not be given an application that would overemphasize the employer's right to the detriment of the employee by treating as confidential and secret all information that might be useful to the employee. (*Mathews Paint Co.* v. *Seaside Paint Co., supra.*) The evidence produced did not warrant the trial court in granting an injunction.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.