[Civ. No. 30320.    Second Dist., Div. Three.    Dec. 12, 1967.]

GLENN N. KING, Plaintiff and Appellant, v. PACIFIC VITAMIN CORPORATION et al., Defendants and Respondents.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Block, Toler, Bulloch, Biggerstaff & Scully and Lloyd A. Bulloch for Plaintiff and Appellant.

Stapleton & Isen and F. G. Stapleton for Defendants and Respondents.

SHINN, J.*—Glenn N. King brought suit against Pacific Vitamin Corporation, Lampert-White Co., a corporation, and Garth J. McQuade accusing them of unfair business practices and seeking an injunction and damages. King, Pacific, and Lampert-White, a subsidiary of Pacific, are wholesalers of merchandise supplied to retail drugstores in Los Angeles County. McQuade, a salesman, worked for King for two and a half years, when he quit his employment and went to work for Pacific. The gravamen of the cause of action is the alleged use by McQuade and Pacific of trade secrets of King's business and confidential information acquired by McQuade as King's employee, by means of which Pacific succeeded in acquiring the business of many of King's customers. It was alleged that the conduct of the defendants had caused and, unless restrained, would continue to cause plaintiff great financial loss. It was also alleged that McQuade and other employees who left plaintiff's service and went to work for Pacific acted with a purpose to appropriate King's business for Pacific, and McQuade and Pacific were accused of having acted with malice. The prayer of the complaint was for an injunction and for damages, both compensatory and exemplary.

The defendants answered, denying any wrongdoing; the action went to trial; at the conclusion of the presentation of plaintiff's evidence, defendants made a motion for judgment under section 631.8 of the Code of Civil Procedure; the motion was granted; the court made findings and conclusions of law, and judgment was entered that plaintiff recover nothing; plaintiff appealed.

As a purported specification of the grounds of appeal plaintiff's brief states: "On this appeal plaintiff contends that the findings and judgment are not supported by the evidence, that the judgment should be reversed and the matter remanded to the trial court for further hearing."

The court found that the defendants had no intention of injuring plaintiff and were not actuated by malice. The court also found that the defendants did not use and did not pos-

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

sess secret information relating to plaintiff's business. There was no conflict in the evidence upon this question. When all the material facts were conclusively proved, the question whether business information possessed by McQuade was confidential was more one of law than of fact. ▮▮ Plaintiff's real contention is that upon the facts found it was error for the court to conclude, as it did, that the defendants did not make use of any confidential information. We cannot disagree with the court's conclusion, and, therefore, must affirm the judgment.

The undisputed facts were that King, Pacific and Lampert-White were short line wholesalers of sundries and proprietaries in Los Angeles County. They were in competition with five or six other short line wholesalers and three full line wholesalers, who sell sundries and proprietaries and also pharmaceuticals. McQuade, an experienced drugstore salesman, worked for King from January 1961 to June 1963 on a commission basis. He was not given a "route" book or list of customers nor any leads as to prospective customers. He was strictly upon his own in contacting retail drugstores. When he left King in June 1963 and went with Pacific he was selling to 58 retail drugstores which he had procured as customers without assistance from King. These stores were widely scattered around the county. More than 40 of these customers stayed with McQuade and transferred their accounts to Pacific.

King handles 6,000 articles of merchandise. These are listed upon a 30-page order form and price list. McQuade would leave an order form with a customer and in a week, or two weeks, would pick up the order and leave another blank. King maintained a warehouse, and a staff who made deliveries.

▮▮ The rules of law which protect the rights of an employer against the unauthorized use of secret information pertaining to his business have been stated in many cases in which former employees have been found guilty of using trade secrets of the former employer in competition with him.

The elements of such a case were stated in *California Intelligence Bureau* v. *Cunningham,* 83 Cal.App.2d 197 [188 P.2d 303]; they are summarized in the brief of respondents as follows:

"(1) The existence and misuse of confidential information by the former employee and those persons with whom it is charged that he acted in concert;

"(2) The existence of an intent to injure the former employer;

"(3) A selection of preferred customers whose identities are not generally known to the trade;

"(4) The circumstance that a customer will ordinarily patronize only one concern; and

"(5) The existence of an established business relationship which would normally continue unless interfered with."

The briefs of the parties discuss all the foregoing elements of a recovery of injunctive or monetary relief. It is manifest that the primary and indispensable element of a cause of action is the unauthorized use of secret business information of the plaintiff by the persons sought to be charged.

The law in this field has been developed in the so-called "route" cases; many of them were listed in *California Intelligence Bureau* v. *Cunningham, supra,* 83 Cal.App.2d 197, and in *Whitted* v. *Williams,* 226 Cal.App.2d 52 [37 Cal.Rptr. 692] (and see 27 Cal.Jur.2d, Injunctions, § 35). These were cases of employees who operated routes of customers whom they supplied with laundry and linen service, ice, bread, milk and similar products for their personal use or, in some cases, supplied customers at wholesale with ice or foodstuffs. They got the name "route" cases from the practice of making regular calls on the customers and the maintenance of a record of the customer's requirements. The salesman had the exclusive right to serve the customer on his route. The names and addresses of customers on the routes enabled one employee to take the place of another, either temporarily or permanently, without interruption of the service, and the friendly business relationship with the customers made for a continuation of the patronage along the route. These considerations, which gave the employer an advantage over competitors, constituted business secrets which were entitled to protection. Plaintiff has cited not less than 20 of the cases which applied the principles of the route cases, and he contends that he proved a case for an injunction or damages within those principles, that is to say, that he proved the defendants were alienating his customers by the use of his business secrets. This was the crucial question.

The court found that McQuade was not given a route book or a list of prospective customers or leads to call upon; and also that the names and addresses of customers for the merchandise sold by plaintiff are to be found in telephone directories, specialized trade listings, retail drugstore route lists and a special trade directory, and that the trade directories furnish information pertaining to the size and credit

ratings of the stores; each of the stores on McQuade's list was known to the trade as a customer for sundries and proprietaries, and bought from two or more suppliers.

Appellant does not contend that any of these findings is without support in the evidence. He argues, rather, that salesmen for wholesalers in drugs establish close personal friendships with their customers and learn what their requirements and preferences are and the value of the various accounts, which, he maintains, constitute a type of confidential information. This argument assumes, as a fact, that the same friendly relationship exists between a salesman of drugs at wholesale and his customers as that which characterizes the personal relations between a route salesman and the householders who buy his butter and eggs. Plaintiff does not refer to any evidence that such a relationship existed between McQuade and his customers. The contention is also contrary to the court's finding that "Personal and friendly relationships between salesmen and customers [are] not a material basis for the trade of such drugstores, and [were] not a material basis for the commencement or continuation of the trade between plaintiff, as represented by his salesman Garth J. McQuade, and the drugstores listed in Exhibit "A" attached to the First Amended Complaint."

The uncontradicted evidence refutes the argument of plaintiff that all salesmen of drugs at wholesale to retail drugstores in widely scattered locations are possessed of secret lists of customers, secret information concerning their regular purchases, and valuable friendly relations with customers, which constitute business assets of their employers. It was alleged in the complaint that the general practice is the same as that followed by McQuade; between the visits of the salesman the druggist makes out a list of his requirements and deliveries are made in due time. There is entirely lacking the friendly and confidential relationship which exists between housewives and laundrymen or dairy salesmen who are privileged to enter homes to pick up or deliver laundry, or fill the refrigerator with the usual requirements of the family.

In the over-all field of employment the route salesmen constitute a very small and unique group. It is unique because all the information and knowledge concerning the identity of the customers and their business requirements has been acquired by the salesman for the use and benefit of his employer, and is therefore the property of the latter. ■ But a list of customers built up by an employee, who is not a part of this

group, through his own initiative and efforts, without an agreement that the same is to be kept confidential for the benefit of the employer, is not a business secret of the latter. The employee, having left his employment, is free to make use of his experience and whatever he has learned in the business, as long as he does not violate his employer's confidence.

In *Avocado Sales Co.* v. *Wyse*, 122 Cal.App. 627 [10 P.2d 485], the plaintiff sought an injunction restraining two former employees from selling avocados to merchants, hotels, cafes and clubs that had been served by the defendants while in plaintiff's employ. The plaintiff was denied injunctive relief upon the ground that the names and places of business of retail dealers in avocados, the hotels, cafes and clubs who bought them, were readily ascertainable and that "a list of grocery stores, vegetable or fruit stands, etc., where avocados are sold to the general public, where displays are made to attract the attention" cannot constitute confidential information and a trade secret. For this reason the court distinguished and declined to apply the rules of the laundry, bread, ice and milk route cases.

*Mathews Paint Co.* v. *Seaside Paint & Lacquer Co.*, 148 Cal.App.2d 168 [306 P.2d 113], was a suit for an injunction restraining the defendants, former employees of plaintiff, from selling lacquer products to plaintiff's former customers. It was alleged that the defendants, while in the employ of plaintiff, had learned the names and addresses of the customers for plaintiff's lacquer products and the individual and specific requirements and needs respecting the type and quality of lacquer products desired by the customers; this information was peculiarly and exclusively within the knowledge and memory of defendants; defendants were making use of this information to sell other lacquer products in competition with plaintiff. Demurrers were sustained to plaintiff's second amended complaint, plaintiff declined to amend and a judgment of dismissal was entered. The judgment was affirmed on appeal. The court found the complaint insufficient to state a cause of action for the reason that it failed to allege the use by the defendants of secret and confidential information pertaining to plaintiff's business.

As to the names and addresses of the purchasers of lacquer products the court was of the opinion that if the defendants had not gained that information while employed by plaintiff, just the exercise of ordinary perspicacity would have sent them to these very places to solicit buyers. With respect to the use of

information as to the particular requirements of the buyers
the court was of the opinion that any of plaintiff's competi-
tors could easily have acquired the same information, that the
defendants were "accused of nothing except selling to former
customers of plaintiff in a field that is known to and open to
all competitors of plaintiff," and the court then said "This
would have been the natural thing to do if they had been in
the plaintiff's employ and yet had never learned the names
and addresses of plaintiff's customers." (P. 175.)

In *Fortna* v. *Martin*, 158 Cal.App.2d 634 [323 P.2d 146],
the business was termite control. Martin, while employed by
Fortna, learned the names of real estate brokers and lending
institutions which were the principal source of plaintiff's bus-
iness and he also learned plaintiff's method of bidding upon
jobs. After Martin left and went into business for himself he
solicited and obtained work through brokers and lending
institutions plaintiff had depended upon. Upon findings that
Martin was using the confidential information and trade
secrets of plaintiff the court enjoined him from the use of the
same in competition with plaintiff. The judgment was
reversed. The court held that anyone in the termite control
business would know that the need for termite control work
would become known to real estate brokers, banks and other
lending institutions and that their identities, if learned by
Martin while an employee of Fortna, could not be a business
secret.

In *Continental Car-Na-Var Corp.* v. *Moseley*, 24 Cal.2d 104
[148 P.2d 9], the court rejected the contention of an employer
that a record of the names, addresses and purchases of a great
number of its customers was secret business information. The
defendant, Moseley, left the employ of plaintiff and was using
the list of customers in soliciting buyers for products in com-
petition with plaintiff. A judgment enjoining Moseley from
such solicitation was reversed. The reasons for the reversal
were that the names and addresses of the persons, firms and
corporations using the type of products sold by plaintiff were
commonly known to the trade, they were called upon by the
salesmen for various companies, and there was nothing exclu-
sive in the business relationship between the customers and
Moseley or Continental.

The findings distinguish the present case from the route
cases in several material particulars; the names and places of
business of the customers being sold by McQuade were well
known in the trade, and the stores did not deal exclusively

with King; McQuade developed his business contacts by his own efforts, for his own benefit and without assistance from King; he faced open competition from other drug wholesalers; his relations toward his customers differed from those of the route salesmen in that they were not on a personal and friendly basis, and he could not possibly know before he received an order which of several thousands of items the stores carried might be in short supply. He rendered no service that could not have been rendered by the salesman of a competitor who would furnish an order blank, such as was commonly used, and pick it up after it was completed. There was no evidence that McQuade and Pacific possessed any knowledge as to which retail drugstores were the largest or the most desirable customers that was not possessed by King's competitors.

■ Appellant calls attention to the fact that reference was made to section 2860 of the Labor Code[1] in *California Intelligence Bureau* v. *Cunningham, supra,* 83 Cal.App.2d 197, *Reid* v. *Mass Co., Inc.,* 155 Cal.App.2d 293 [318 P.2d 54], *Alex Foods, Inc.* v. *Metcalfe,* 137 Cal.App.2d 415 [290 P.2d 646], and *Nalley's Inc.* v. *Corona Processed Foods, Inc.,* 240 Cal.App.2d 948 [50 Cal.Rptr. 173]. Quite properly appellant states: "The statutory provision, standing alone, is of little help in determining whether in any given instance a course of conduct is fair competition or tortious." The section is not mentioned by respondent.

None of the cases depended upon section 2860 of the code as a basis for holding that the information possessed by the employee belonged to the employer. The right of the employer to protection derived from the fact that the information was secret, and not from the mere fact that it came to the employee in the course of his employment. The code section cannot be given an interpretation at variance with the established rule that business information acquired by an employee which is not confidential in fact, or by agreement, is not protectible property of the employer. What the employee acquires in his own right by way of experience and useful knowledge of a business may be of far greater value to him than knowledge of the identity of the employer's customers and their business connections. We would not doubt that it is a univer-

---

[1] "Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment."

sal custom for salesmen or executives, or other employees, to be sought and lured away from present employment because of exceptional skill and proficiency they have manifested, nor can it be questioned that they have a right to make capital of their abilities. That is what happened when McQuade left King and went with Pacific. He took with him nothing that belonged to King; only what was his own to use fairly and honestly.

██ Plaintiff cites cases in which it was found that the accused defendant was acting with the deliberate intention of injuring and undermining the plaintiff's business and was enjoined from carrying out that purpose. (*Gloria Ice Cream etc. Co.* v. *Cowan,* 2 Cal.2d 460 [41 P.2d 340]; *Langendorf United Bakeries, Inc.* v. *Phillips,* 5 Cal.2d 150 [53 P.2d 363]; *Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697 [275 P. 944, 276 P. 995].) The cases are not in point. The findings that the defendants acted without malice and in good faith acquit them of having an intent to destroy or injure plaintiff's business. The fact that they intended to take away some of plaintiff's business did not prove their actions to be wrongful. There is virtue in fair competition in business even though a competitor is hurt.

The judgment is affirmed.

Ford, P. J., and Cobey, J., concurred.