**OVATION PLUMBING, INC., Plaintiff–Appellee and Cross–Appellant,**

v.

**Darrell D. FURTON, Defendant–Appellant and Cross–Appellee.**

No. 00CA0101.

Colorado Court of Appeals, Div. III.

April 12, 2001.

As Modified on Denial of Rehearing Sept. 6, 2001.

McKenna & Cuneo, L.L.P., Stephen B. Shapiro, Eloise Henderson Bouzari, Denver, CO, for Plaintiff–Appellee and Cross–Appellant.

Hall & Evans, L.L.C., Alan Epstein, Michael L. Luchetta, Denver, CO, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge NIETO.

Defendant, Darrell D. Furton (Furton), appeals a judgment entered on jury verdicts against him and in favor of plaintiff, Ovation Plumbing, Inc. (Ovation), on Ovation's claims for misappropriation of trade secrets and unfair competition. Judgments on other claims were also entered in favor of Ovation, but those judgments are not at issue here. Ovation cross-appeals the trial court's order denying its motion for injunctive relief. We affirm the judgment, reverse the order, and remand with directions.

Ovation was a plumbing subcontractor for Jefferson Properties, Inc. (JPI), a multi-family home developer. Furton was an independent contractor who did plumbing work for Ovation pursuant to Ovation's contract with JPI. Ovation became dissatisfied with Furton's performance and terminated him. Furton subsequently submitted a bid for a plumbing contract on an unrelated, but similar multi-family home construction project known as Strawberry Fields, and his bid was accepted.

Ovation then filed this action against Furton. It asserted a claim for theft of a trade secret based upon Furton's use of Ovation's confidential contract pricing and bid information. Ovation claimed that Furton misappropriated and used to his advantage information from Ovation's bid on the plumbing contract with JPI. Ovation claimed that this information was a trade secret of great value and that the misappropriation caused it damage. Ovation also claimed unfair competition and misappropriation of business value based upon Furton's misrepresentations to the developers of the Strawberry Fields project concerning the scope of the work Furton had performed for Ovation, and Furton's misappropriation of Ovation's business reputation.

After judgments were entered against Furton, Ovation moved for an injunction to prevent Furton from further use of Ovation's trade secrets. The trial court denied the motion, finding that there was no showing of irreparable injury and that Ovation had an adequate remedy at law.

## I.

Furton first contends that, for several reasons, Ovation was not entitled to judgment on its claim of theft of trade secrets. We are not persuaded.

## A.

Furton first asserts that Ovation failed to present a *prima facie* case of misappropriation of trade secrets because, as a matter of law, the bid pricing information does not meet the definition of a trade secret under Colorado law. We disagree.

Colorado's Uniform Trade Secrets Act defines a trade secret as:

> the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, ... or other information relating to any business or profession which is secret

and of value. To be a "trade secret" the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

Section 7–74–102(4), C.R.S.2000.

■ What constitutes a trade secret is a question of fact. *Gold Messenger, Inc. v. McGuay*, 937 P.2d 907 (Colo.App.1997). Novelty and invention are not required for a trade secret. "The protection is merely against breach of faith and reprehensible means of learning another[']s secret." *Rivendell Forest Products, Ltd. v. Georgia–Pacific Corp.*, 28 F.3d 1042, 1044 (10th Cir. 1994) (quoting Restatement of Torts § 757 comment b at 6–7 (1939)).

Furton relies on *Fortna v. Martin*, 158 Cal.App.2d 634, 323 P.2d 146 (1958), and *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 274 A.2d 577 (1971), for his assertion that bid pricing information cannot be a trade secret as a matter of law. Both of these cases are appeals from injunctions that were granted based on provisions in employment contracts restricting competition, and both holdings are distinguishable. In both *Fortna* and *Whitmyer*, the plaintiffs claimed their methods and procedures for developing bids were trade secrets. In each case the appellate court held that procedures for estimating prices and the constituent elements of bids were not trade secrets.

In contrast, here the trade secret claimed by Ovation is the bid itself, rather than the methods of calculating the bid or the constituent elements of the bid. The heart of Ovation's trade secrets claim is that Furton misappropriated the actual bid and used it to his advantage and to Ovation's disadvantage. Accordingly, we do not find these authorities persuasive. •

We note that the definition of trade secret in § 7–74–102(4) includes "confidential business or financial information ... or other information relating to any business or profession which is secret and of value." This definition, together with evidence of value and of measures to protect disclosure, is broad enough to include a bid on a contract. Accordingly, we decline to adopt a *per se* rule

that a bid on a contract cannot be a trade secret as a matter of law. .

**B.**

■ Furton also asserts that the bid cannot be a trade secret because it was not used continuously in the operation of Ovation's business. He argues that the bid is specific to a particular contract and therefore would not be useful in future bids on the other projects. We disagree.

■ Section 7–74–102(4) does not contain a continuous use requirement. Statutes must be construed according to their plain and obvious meaning, and they should not be given a strained or forced interpretation. *People v. Browning*, 809 P.2d 1086 (Colo. App.1990). We will not read a continuous use requirement into this statute when it does not contain such language nor any indication of legislative intent to include this concept.

Furton relies on *Wisconsin Electric Power Co. v. Public Service Commission*, 110 Wis.2d 530, 329 N.W.2d 178 (1983). However, that case is not persuasive because it concerns a Wisconsin statute defining trade secrets as including "business information used or for use in the conduct of a business," a term not found in our statute.

**C.**

Furton also contends there was a failure of proof on two elements of the trade secrets claim. He argues that Ovation's bid could not be a trade secret because the evidence did not establish that it had value to Ovation in the future or that it gave Furton any competitive advantage. Furton also argues that, even if the bid price was a trade secret, there was no evidence that Furton misappropriated the bid information. We are not persuaded.

■ A jury's verdict may be reversed on appeal if the record reveals a failure of proof. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 39 Colo.App. 100, 565 P.2d 952 (1977), *aff'd*, 195 Colo. 253, 577 P.2d 748 (1978). However, if there is evidence in

the record, the weight of evidence, credibility of witnesses, and reasonable inferences to be drawn from the evidence are within the jury's exclusive province. *City of Fountain v. Gast,* 904 P.2d 478 (Colo.1995). Jurors may rely on circumstantial evidence in reaching their conclusion. *White v. Muniz,* 999 P.2d 814 (Colo.2000).

When reviewing a challenge based on the sufficiency of the evidence, an appellate court may not disturb the jury's verdict unless it is clearly erroneous. *Ajay Sports, Inc. v. Casazza,* 1 P.3d 267 (Colo.App.2000). An appellate court must evaluate the record in the light most favorable to the verdict, and every inference fairly deducible from the evidence should be drawn in favor of the verdict. *Anderson v. Dunton Management Co.,* 865 P.2d 887 (Colo.App.1993). "[A] jury's verdict will not be disturbed if there is *any* support for it in the record." *Murphy v. Glenn,* 964 P.2d 581, 584 (Colo.App.1998) (emphasis in original).

The jury was instructed that the bid had to have value to be considered a trade secret. A review of the record reveals that both direct and circumstantial evidence was presented concerning the value of the bid to Ovation and the advantage that knowledge about the bid gave Furton.

JPI's regional vice president testified that Ovation's bidding information would be valuable to a plumbing contractor bidding on multi-family projects. Ovation's president testified that multi-family projects have similarities and therefore Ovation's bid would be valuable in formulating a bid on another multi-family project.

Ovation's president also testified that formulating a plumbing project bid was a detailed process requiring fifty to sixty pages of documentation. This is circumstantial evidence that having access to Ovation's bid information gave Furton a competitive advantage because he did not have to spend the time or money to generate or gather the documentation to develop his own bid on a similar project.

Furton also argues that there was a complete lack of evidence that he obtained, or could have obtained, the bid information from the JPI trailer located on the job site. Furton points to testimony that the dollar amounts on the bids kept in the trailer had been redacted and therefore were not available to him.

However, at least one witness stated that the dollar amounts were contained in bids on file in the trailer. Further, several witnesses testified to Furton's frequent entry into the trailer where the bid information was stored and his friendly social relationship with a JPI employee who had access to the bid information in the trailer.

There also was evidence that when Furton and the JPI employee were accused of misappropriating the bid information, they did not deny it, but only smiled in response. Furton argues that smiling when confronted with the accusation that the bid information was misappropriated is not evidence upon which the jury may rely. To the contrary, nonverbal conduct, if it is intended to be communicative, is a statement and can be admitted into evidence. Laughing at an accusatory statement can be nonverbal conduct showing an adoption of the statement and is admissible in evidence. *People v. Pappadiakis,* 705 P.2d 983 (Colo.App.1985), *aff'd sub nom., Peltz v. People,* 728 P.2d 1271 (Colo.1986). The jury may accord the evidence whatever weight it deems appropriate. *City of Fountain v. Gast, supra.*

It is not clear from the record whether Furton copied Ovation's bid documents or merely used information that he took from the documents. The lack of evidence on the manner of the misappropriation is due, at least in part, to Furton's destruction of all documents relating to his own bids. However, it is clear from the record that Furton did not have permission to access or any need for access to Ovation's bid documents in performing his work for Ovation. Therefore, whatever method Furton used to acquire Ovation's bid information, it was, as the jury found, a misappropriation of that information.

While the evidence was by no means conclusive, it was for the jury to determine what weight to give it. We will not disturb the jury's verdict here, because there was evi-

dence in the record to support it. *See Ajay Sports, Inc. v. Casazza, supra.*

## II.

Furton next contends that Ovation's unfair competition claim is totally unsupported by the record. Again, we are not persuaded.

The jury was instructed that Ovation must prove one of the following to prevail on its unfair competition claim:

(1) the defendant falsely represented the scope of his responsibilities on the plaintiff's plumbing projects in order to take advantage of the plaintiff's good reputation and such representation confused or deceived third parties; or

(2) the defendant took credit for the plaintiff's work, thereby stealing the credit and good reputation of the plaintiff to the confusion and deception of third parties.

Evidence was presented that another developer, on whose project Furton bid, was led to believe from conversations with Furton that he had been a plumbing subcontractor for JPI and that he had performed all facets of the plumbing work on a JPI project. It was undisputed that Ovation had been JPI's plumbing contractor on all of its recent projects, and, while Furton had been a subcontractor for Ovation on one of JPI's projects, he had performed only a limited part of the plumbing work.

The president of Ovation testified that Furton had "intercepted" Ovation's opportunity to bid on the Strawberry Fields project by representing himself as "either a partner to Ovation Plumbing or Ovation Plumbing itself." Another witness testified that Furton had held himself out as the owner of Ovation in order to arrange for cellular telephone service. Yet another witness testified that Furton told an equipment rental agent that he was the owner of Ovation Plumbing.

We conclude that there was sufficient evidence to support the jury's findings, and accordingly we do not disturb those findings on appeal.

## III.

On cross-appeal, Ovation contends that the trial court erred in denying its motion for a permanent injunction on grounds that "there is no showing of irreparable injury sufficient to justify equitable intervention in the relationship of the parties. Furthermore, Plaintiff has received a judgment and has an adequate remedy at law." We reverse this order and remand for further proceedings.

Section 7–74–104, C.R.S.2000, provides for an award of damages for misappropriation of trade secrets, and § 7-74-103, C.R.S. 2000, provides for injunctive relief stating: "Temporary and final injunctions including affirmative acts may be granted on such equitable terms as the court deems reasonable to prevent or restrain actual or threatened misappropriation of a trade secret." Thus, the Uniform Trade Secrets Act, § 7–74–101, et seq., C.R.S.2000, authorizes awards of both damages and injunctive relief when necessary to afford a plaintiff complete relief. However, the trial court is not required to award both. The grant or denial of an injunction lies within the sound discretion of the trial court and will be reversed only upon a showing of abuse of that discretion. *Scott v. City of Greeley,* 931 P.2d 525 (Colo. App.1996).

Here, the trial court made no findings of fact to support its conclusion that Ovation was not entitled to injunctive relief. Therefore, we are unable to determine whether the denial of the injunction was an abuse of discretion. *See Main Electric Ltd. v. Printz Corp.,* 980 P.2d 522 (Colo.1999) (remanding to trial court for factual findings necessary for appellate review). We conclude that the order must be reversed and the cause remanded with directions for the trial court to redetermine this issue after making findings of fact. The trial court may conduct an evidentiary hearing if it deems it appropriate.

Accordingly, the judgment is affirmed, the order denying injunctive relief is reversed, and the cause is remanded for further pro-

ceedings consistent with the views expressed in this opinion.

NEY and MARQUEZ, JJ., concur.