[Civ. No. 28807.   Second Dist., Div. Two.   Mar. 21, 1966.]

NALLEY'S INC., Plaintiff and Respondent, v. CORONA PROCESSED FOODS, INC., et al., Defendants and Appellants.

Fierstein & Dolin and Harvey Fierstein for Defendants and Appellants.

Tremaine & Shenk and John W. Shenk for Plaintiff and Respondent.

ROTH, P. J.—On March 11, 1964, Nalley's Inc. (Nalley's) respondent, sought an injunction against Corona Processed Foods, Inc. (Corona), Gary Osborne (Osborne) and James

Daly (Daly). A verified complaint to which an unverified answer is filed alleged that: Nalley's is a processor and distributor of Spanish foods, salads, and other food products; Corona is engaged in the same business; Osborne and Daly were salesmen for Nalley's until November 22, 1963; their function was to take orders and deliver Nalley's food products on assigned routes originated by it for which they were paid a salary plus commission; both men had acquired by reason of their employment trade secrets of great value to Nalley's, including customer lists and business methods of Nalley's; and that since November 22, 1963, Osborne and Daly have been employed by Corona as salesmen distributors.

The complaint further alleges that: some of the customers on the aforementioned routes were more profitable than others; the identity of those customers was confidential information; said customers would ordinarily patronize only one distributor; the business relationship between Nalley's and these customers would normally continue unless interfered with. Further, it was alleged that: after November 22, 1963, Corona altered its marketing procedure to employ a route system similar to Nalley's; Osborne and Daly as employees of Corona utilized their friendly relations with Nalley's customers and confidential information obtained while in the employ of Nalley's to solicit the most profitable customers of Nalley's for their new employer; all appellants have acted as aforesaid with intent to injure Nalley's; Nalley's has been harmed and will continue to suffer irreparable injury unless appellants are restrained from further solicitation; and that Nalley's has no plain, adequate or speedy remedy at law.

Nalley's then prayed for judgment enjoining appellants from soliciting any of the present or past customers of Nalley's on the aforesaid routes and from utilizing any of the confidential information obtained by Osborne and Daly while they were employed by Nalley's.

A temporary restraining order predicated on the verified complaint was issued and appellants were ordered to show cause why a preliminary injunction should not issue against them.

The hearing on the order to show cause why a preliminary injunction should not issue was on the record and the declarations filed by the litigants. A preliminary injunction was issued and appellants Corona, Osborne and Daly were en-

joined from selling, offering to sell, or soliciting the sale of potato salad, macaroni salad and cole slaw, in bulk form, to 11 specified business establishments.

Appellants appeal from the order granting the preliminary injunction.

The gist of appellants' argument is that the declarations fail to present probative evidence supporting the issuance of the preliminary injunction. Integrated with this argument is the contention that many of the criticized declarations contain conclusions and hearsay.

It should be noted preliminarily that the record shows no objection to the form of Nalley's declarations. ■ "It is well settled that relevant and material evidence, though incompetent and therefore inadmissible, if received without proper objection or motion to strike, is to be regarded as sufficient to establish a fact and as supportive of an order or judgment. This rule applies to incompetent statements in affidavits. [Citations]." (*Cope* v. *Cope*, 230 Cal.App.2d 218 233 [40 Cal.Rptr. 917].) The rule is equally applicable to statements made under penalty of perjury. (Code Civ. Proc., § 2015.5.)

■ It is also established that the rule on appeal favoring evidence which supports the order or judgment where conflict appears on the record is as applicable to declarations and affidavits as it is to evidence orally presented. (*Flood* v. *E. L. Goldstein Co.*, 158 Cal. 247, 248 [110 P. 916]; *Beckett* v. *Kaynar Manufacturing Co., Inc.*, 49 Cal.2d 695, 699 [321 P.2d 749].)

We confine ourselves therefore to a determination whether the declarations irrespective of form contain sufficient probative evidence to validly support the preliminary injunction.

All parties to this appeal rely heavily on the case of *Alex Foods, Inc.* v. *Metcalfe*, 137 Cal.App.2d 415 [290 P.2d 646]. In *Metcalfe*, the legal and factual issues are substantially identical to those in the case at bench. In *Metcalfe* the court discussed the law and policy underlying the right of an employer to enjoin former employees and their new employers from utilizing confidential information gained by such former employees under a prior employment. The court said at pages 423-424:

"Section 2860 of the Labor Code provides that everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his em-

ployer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment. A customer list built up by the employer over a period of years is his property, and its use by a former employee for his own advantage will be enjoined. (*California Intelligence Bureau* v. *Cunningham,* 83 Cal.App.2d 197 [188 P.2d 303].) Equity will intervene to restrain an employee from divulging confidential information gained in the course of his employment or using such information to his employer's prejudice. On the other hand, every individual possesses a form of property, the right to pursue any calling, business or profession he may choose. A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition is fairly and legally conducted. Equity will, to the fullest extent, protect the property rights of employers in their trade secrets and otherwise, but public policy and natural justice require that equity should also be solicitous for the right inherent in all people, not fettered by negative covenants upon their part to the contrary, to follow any of the common occupations of life. (*Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104 [148 P.2d 9].)''

■ To balance the conflicting policy considerations set forth in the above excerpt, the court stated what it conceived to be proper guidelines which must be established as conditions precedent to obtain an injunction against the unlawful use of confidential information by a former employee. These are:

(1) The information must be confidential and not readily accessible to competitors; (2) The former employee solicited the customer of his former employer with intent to injure him. (3) The former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade; (4) The business is such that a customer will ordinarily patronize only one concern; (5) The established business relationship between the customers and the former employer would normally continue unless interfered with.

When these facts are established the injunction may issue not only against the guilty employee, but also against his new employer. (*Alex Foods, Inc.* v. *Metcalfe, supra,* at p. 429.)

It is clear from an examination of the declarations filed by Nalley's that they contain substantial probative evidence to support a finding on all five of the aforementioned elements. *First Element*: (Confidential information not readily accessible) : Jerry Jancarik, Sales Manager of Nalley's, declared that "[i]n connection with their duties as driver-salesmen distributors, [Osborne and Daly] were given certain route books which showed each stop where there was a customer of Nalley's, Inc. . . ." He further declared that Osborne and Daly solicited certain meat markets which handle delicatessen products. "Messrs. Daly and Osborne could only have known of these particular outlets for their products by use of the customer lists of Nalley's as such markets with a delicatessen are not readily known or discoverable."

Jerry Elliot, a route salesman for respondent, listed 8 of the 11 stores enumerated in the preliminary injunction, declaring that "none of the stops above mentioned which were solicited by Gary Osborne and/or James D. Daly are listed under 'Delicatessens' in the Yellow Pages of the directories for the areas involved, nor are they listed in the route lists, area maps and market data published by the Los Angeles Times."

Clarence Purcer, another Nalley's route salesman, made a similar declaration with respect to the remaining three business establishments listed in the preliminary injunction. *The Second Element*: (Solicitation with intent to injure) : There are numerous declarations establishing the intent of Corona and appellant employees to deprive Nalley's of its customers. From these declarations and from the evidence as a whole, it is reasonable to infer that the solicitations were made with the intent to injure. *The Third Element*: (Preferred, most profitable customers whose identities are not generally known in the trade) : The anonymity required by this element is inferable from the declarations made with respect to Element One. The declarations of Elliot and Purcer state that Osborne and Daly solicited only those customers which were most profitable to Nalley's, including the 11 establishments listed in the preliminary injunction. *The Fourth Element*: (Patronizing a single supplier) : Jerry Elliott declared that "[t]he customers which buy the type of food distributed by both [Nalley's] and Corona ordinarily patronize only one distributor of the bulk salads inasmuch as they are used in a delicatessen and do not constitute packaged foods." This statement was applicable to 8 of the 11 specified businesses.

Clarence Purcer stated that the remaining three establishments had purchased from Nalley's prior to November 22, 1963, but have been since solicited by appellants, diverted to Corona and now refuse to purchase from respondent.

It is inferable from the foregoing declarations that the stores included in the preliminary injunction ordinarily purchased bulk salad products from only one supplier.

Appellants insist that this element is not established, placing great reliance on two photographs submitted to the trial court and now included in the record. These photographs show Nalley's and Corona products lying side by side in a cooler in several markets. This conflict in the evidence is, of course, not within our province to resolve. Nevertheless, we note that the products shown in the pictures are *packaged* goods while the preliminary injunction proscribes only the solicitation and sale of *bulk* products. The declaration of Jerry Elliot explains that it is *bulk* goods which are ordinarily purchased from only one distributor. This explanation is in accord with common sense. A consumer purchasing a salad in bulk form from a delicatessen will not ordinarily rely on a brand name as he would with packaged foods. *The Fifth Element*: (Continuation of the business relationship absent interference): Jerry Elliot declared with respect to eight of the businesses: "That in contacting the former customers who have changed over from the products of Nalley's, Inc. to that of defendant [Corona] . . . declarant has determined that the business relationship between declarant and the customers would normally have continued but for the price cutting and giving of loss leaders by defendants Osborne and Daly."

While no similar declaration was made with respect to the remaining three establishments, the evidence as a whole justified an inference that had it not been for the unlawful interference of appellants, the customers would have continued to purchase bulk salad products from Nalley's.

█ The issuance of a preliminary injunction pendente lite is a matter of discretion. The court will interfere only where it is clear that that discretion has been abused by the trial court. (*Miller & Lux* v. *Madera Canal & Irr. Co.*, 155 Cal. 59, 81 [99 P. 502, 22 L.R.A. N.S. 391]; *Isert* v. *Riecks*, 195 Cal. 569, 576 [234 P. 371].) █ We find no abuse of discretion. █ Moreover, it should be remembered that "[t]he granting . . . of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It

merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should . . . be restrained from exercising the rights claimed by him." (*Miller & Lux* v. *Madera Canal & Irr. Co., supra,* at pp. 62, 63.)

The order granting preliminary injunction is affirmed

Herndon, J., and Fleming, J., concurred.