[Civ. No. 12113. Third Dist. Jan. 13, 1970.]

CHARLOTTE V. WALLER, Plaintiff and Appellant, v.
JOHN F. WALLER, Defendant;
JEANIE LAKENS, as Administratrix, etc., Movant and Respondent.

458

**COUNSEL**

Edwin L. Z'Berg for Plaintiff and Appellant.

Colley & McGhee and Nathaniel S. Colley for Movant and Respondent.

## OPINION

**JANES, J.**—This is an appeal by plaintiff wife from an order granting a motion by the administratrix of defendant's estate for entry of a final decree of divorce *nunc pro tunc,* and from the final) decree thereupon entered. ▆ Since an appeal does not lie from the order, that portion of the appeal must be dismissed; the order is reviewable on appeal from the final decree. (*Nemer* v. *Nemer* (1953) 117 Cal.App.2d 35, 37 [254 P.2d 661]; *Nicolai* v. *Nicolai* (1950) 96 Cal.App.2d 951, 954-955 [216 P.2d 913].)

Plaintiff obtained an interlocutory decree of divorce from defendant John F. Waller on January 30, 1963. Defendant died on April 10, 1967, before entry of a final decree. Respondent, defendant's daughter by a previous marriage, is also administratrix of his estate. Upon motion by her as administratrix,[1] the trial court on May 15, 1968, granted a final decree of divorce and directed its entry *nunc pro tunc* as of January 31, 1964. The motion was made under section 133 of the Civil Code[2] on the ground that the final decree could have been entered on "February 1, 1964" or at any time thereafter, "but was not so entered through inadvertance [*sic*], mistake and excusable neglect."

Plaintiff's attack upon the action of the trial court is based upon the contentions that (1) the evidence supporting a reconciliation between the parties was clear, undisputed and conclusive, but (2) assuming, *arguendo,* that the evidence was insufficient to establish a reconciliation, the trial court exceeded its authority, under the circumstances of this case, in entering the final decree *nunc pro tunc.*

---

[1]Section 132 of the Civil Code provides in part: ". . . The death of either party after the entry of the interlocutory judgment does not impair the power of the court to enter final judgment. . . ." Plaintiff raises no question as to respondent's failure to obtain substitution as a party. (See, *Kern* v. *Kern* (1968) 261 Cal.App.2d 325, 328-329 [67 Cal.Rptr. 802].)

[2]Section 133 of the Civil Code provides in relevant part: "Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered, if no appeal has been taken from the interlocutory judgment or motion made for a new trial to annul or set aside the judgment or for relief under Chapter 8, Title 6 of Part 2 of the Code of Civil Procedure, the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. . . . Upon the filing of such final judgment, the parties to such action shall be deemed to have been restored to the status of singe persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the date of service of copy of summons and complaint upon, or appearance by, the defendant spouse as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment, upon the filing thereof."

## The Issue of Reconciliation

Declarations under penalty of perjury were filed in support of, and in opposition to, the motion. Sharp conflicts—particularly on the issue of reconciliation—were raised by plaintiff's declaration opposing the requested order. At the hearing of the motion, the only testimony given was that of plaintiff and her daughter, Dorothy Sheehan.

Plaintiff argues that "the evidence was overwhelming and undisputed that there was a reconciliation." ■ However, "[l]ike oral testimony, it is the province of the trial judge, in considering affidavits, to determine the credibility of the affidavits, weigh their assertions and resolve any factual conflict created thereby." (*Mackie* v. *Mackie* (1962) 208 Cal.App. 2d 547, 551-552 [25 Cal.Rptr. 336].) ■ "In those cases where the issues are tried on affidavits, the rule on appeal is that the affidavits which favor the contentions of the prevailing party establish the facts stated therein, and all facts which reasonably may be inferred therefrom. . . . When there is a conflict in the facts presented by affidavits, the determination of those facts by the trial court will not be disturbed on appeal." (*Kern* v. *Kern, supra,* 261 Cal.App.2d at p. 337.) ■ Here, the trial court concluded that "after the Interlocutory Decree of Divorce was entered herein the parties did not effect a reconciliation." The record supports the court's determination.

After the entry of the interlocutory decree on January 30, 1963, plaintiff and John lived at separate addresses in the Sacramento area until September 1, 1963. During this interval, John visited plaintiff on some Sundays and on occasions they had lunch together. In an effort to save their marriage, and at the same time save their Sacramento marital home from repossession, plaintiff and John lived together in the family home from September 1, 1963, into November of that year, when they again separated. There was no evidence they had sexual relations during that period.

John moved to Texas in January 1964. He returned to Sacramento in November 1964 to attend the trial of a personal injury action brought by him against his former employer, the Southern Pacific Company, under the Federal Employers' Liability Act. While in Sacramento for that purpose, he resided at a downtown hotel. Plaintiff visited him at the hotel once accompanied by her daughter, and they had dinner with him. After the trial against the railroad, wherein he obtained judgment, John returned to Texas.

Though living separately, plaintiff and John filed married couple's joint income tax returns in 1964, 1965, and 1966, in order to obtain a tax advantage. During 1966, John sent plaintiff a Southern Pacific railroad pass, in which plaintiff was described as "Wife of Train Dispatcher, Re-

tired." John did not write plaintiff any letters from the date of the interlocutory decree until his death. Plaintiff never requested dismissal of her divorce suit against him.

John's F.E.L.A. judgment[3] was affirmed by the California Supreme Court in March 1967. (*Waller* v. *Southern Pac. Co.* (1967) 66 Cal.2d 201 [57 Cal.Rptr. 353, 424 P.2d 937].) On April 6, 1967, John wrote from Texas to his Sacramento attorney (Mr. Colley) and asked him to "arrange for me at your very earliest convenience, if possible, to obtain . . . [a] final divorce decree from Charlotte [plaintiff]." John's death occurred four days later in an automobile collision in Texas.

■ "Under the law of this state, whatever their conduct with each other subsequent to entry of the interlocutory judgment, to justify denial of a dissolution of the marriage it, at least, must have been such as to constitute a reconciliation of the parties . . .; and it is the duty of the court, where grounds for divorce have been established by an interlocutory decree which has been unassailed until application for final decree, to enter the latter 'unless there is *clear and cogent proof* of reconciliation and resumption of connubial relations, or some other legal ground for denying dissolution of the marriage.' . . . ■ Mere cohabitation or living on the same premises is not sufficient to constitute a ground for denial of a final judgment. Living in the same house, or engaging in acts of sexual intercourse, or cohabiting together as husband and wife during the interlocutory period does not as a matter of law establish a reconciliation of the parties; in addition there must be an intent on the part of the prevailing party to condone past conduct of the offending party and to restore him to all marital rights." (*Mackie* v. *Mackie, supra,* 208 Cal.App.2d at pp. 549-550.) (Italics ours.)

■ A reconciliation occurs when the circumstances show that the parties mutually intended to permanently reunite as husband and wife and

---

[3]The record, as well as the parties' briefs, leaves no doubt that the dispute over the *nunc pro tunc* entry of the final decree is motivated by the parties' respective desires to preserve or defeat any claim by plaintiff to a widow's intestate share of John's interest in the F.E.L.A. judgment in excess of that portion vested in John's trustee in bankruptcy. Guided by counsel, the court's findings and conclusions detoured into that collateral matter, which was not within the issues framed by the notice of motion but which the parties permitted to become an issue. The court found that the damages awarded John against Southern Pacific were his separate property at the time he died. (See, Civ. Code, § 163.5 as it read prior to 1968.) The interlocutory decree had awarded plaintiff certain household furniture and furnishings. There is no evidence in the record to support either the court's finding that this property disposition was pursuant to a property settlement agreement or its conclusion that plaintiff had, by property settlement agreement, "waived any right in and to any property in the possession of, or under the control of the defendant [John] not specifically disposed of by said agreement."

that there has been an unconditional forgiveness by the prevailing party. The mere passage of time during which the parties cohabit is not conclusive as to a permanent reconciliation. The controlling question is the actual finding of an intent to reconcile. ■ Whether an agreement is an unconditional one of forgiveness, and therefore justifies the denial of the final decree, or is a conditional one, and therefore warrants the granting of the final decree, is a question of fact for the trial court. ■ If the evidence, or the reasonable inferences therefrom is conflicting, the determination by the trial court is conclusive on the appellate court. (*Kern* v. *Kern, supra,* 261 Cal.App.2d at p. 331; *Mackie* v. *Mackie, supra,* 208 Cal.App.2d at pp. 550-551; *Tompkins* v. *Tompkins* (1962) 202 Cal.App.2d 55, 58 [20 Cal.Rptr. 530]; *Small* v. *Small* (1954) 123 Cal.App.2d 870, 874 [268 P.2d 63]; *Nemer* v. *Nemer, supra,* 117 Cal.App.2d at pp. 38-39.)

### The Showing of "Mistake, Negligence or Inadvertence"

■ Before relief can be granted under Civil Code section 133, that section requires a showing that "by mistake, negligence or inadvertence" the final decree either has not been entered or, if previously entered, it was not entered as soon as it legally could have been. "In the absence of such a showing the court is without power to enter the final decree *nunc pro tunc.*" (*Berry* v. *Berry* (1956) 140 Cal.App.2d 50, 59 [294 P.2d 757].) Plaintiff asserts there was no such evidence on the present motion.

■ Evidence alone that a party merely failed to apply for a final decree of divorce does not constitute mistake, negligence, or inadvertence, since "[t]here is no rule of law which compels a party to apply for a final decree and the circumstances may be such that a party does not wish to apply for one. Many factors may prompt inaction, i.e., there may have been a reconciliation or there may be hope of one." (*Berry* v. *Berry, supra,* 140 Cal.App.2d at p. 60.)

In the case at bench, however, the trial court in written findings—as well as in its order directing *nunc pro tunc* entry—expressly found that "through inadvertence, mistake and excusable neglect on the part of . . . John F. Waller, no Final Decree of Divorce was entered prior to his death." Evidence to support this finding is contained in the declaration under penalty of perjury executed and filed by respondent administratrix in support of her motion. That evidence consists primarily of a conclusionary recital, which is italicized in the context as follows: "That the parties have not reconciled since the entry of said Interlocutory Decree of Divorce and at all times have continued to live separate and apart from each other. That during the last years of his life . . . JOHN F. WALLER was ill; since the action was brought by plaintiff herein and she pressed it *he assumed that she would enter a Final Decree of Divorce;* but she did not; that on or

about April 1, 1967 decedent contacted his attorney, NATHANIEL S. COLLEY, ESQ., and ask[ed] whether such decree had been entered and was advised that it was not; he then instructed said attorney both by telephone and by letter to cause such decree to be entered. On April 10, 1967 [the date of John's death] said attorney caused a form to be sent to decedent for his signature so that such Final Decree could be entered, but before it was signed and returned for filing and entry decedent died." (Italics ours.)

 Even though affidavits or declarations under penalty of perjury contain hearsay or mere conclusions, they are competent evidence if received without objection or motion to strike. (*Nalley's Inc.* v. *Corona Processed Foods, Inc.* (1966) 240 Cal.App.2d 948, 951 [50 Cal.Rptr. 173]; *Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 233 [40 Cal.Rptr. 917]; *Falk* v. *Falk* (1941) 48 Cal.App.2d 780, 789 [120 P.2d 724].) Plaintiff contends, however, that "[t]he affidavits which were submitted with the motion were objected to" by her and that "the Court did not admit or receive into evidence the affidavits of the administratrix, or one of a Dorothy Sowers [John's sister]." Her contentions are not supported by the record on appeal.

The hearing on respondent's motion required parts of two days. The proceedings of the *second* day come before us in a reporter's transcript. The proceedings on the *first* day were not reported but are summarized in an engrossed settled statement. (Cal. Rules of Court, rule 7.) Neither the clerk's and reporter's transcripts, nor the settled statement, show that plaintiff objected to or moved to strike any portion of respondent's declaration or, for that matter, the declaration of Dorothy Sowers, which was also filed in support of the motion. Similarly, the record on appeal contains no ruling by the trial court excluding either of those declarations. (See, *Campbell* v. *Genshlea* (1919) 180 Cal. 213, 220 [180 P. 336]; Witkin, Cal. Evidence (2d ed. 1966), § 1302, p. 1205.) Although plaintiff's objections to proposed findings of fact asserted that she had objected to respondent's declaration at the hearing, plaintiff submitted to the trial judge two proposed settled statements which refer to objections having been made *only* to the Sowers declaration. We are bound by the contents of the engrossed settled statement as well as the two transcripts and, since no objection to either declaration appears of record, we must assume that plaintiff made none. (*Burns* v. *Brown* (1946) 27 Cal.2d 631, 636 [166 P.2d 1]; *People* ex rel. *Dept. of Public Works* v. *Bond* (1964) 231 Cal. App.2d 435, 437 [41 Cal.Rptr. 900, 13 A.L.R.3d 1142]; *People* v. *Keligian* (1960) 182 Cal.App.2d 771, 774 [6 Cal.Rptr. 680]; *St. George* v. *Superior Court* (1949) 93 Cal.App.2d 815 [209 P.2d 823]; 3 Witkin, Cal. Procedure (1954), Appeal, §§ 141-143, pp. 2319-2324.)

Although at the hearing the court stated it had read the Sowers declara-

tion, it should be noted that this document—in clear noncompliance with section 2015.5 of the Code of Civil Procedure—was executed under penalty of perjury in Graham, *Texas* (i.e., not "within this State." as section 2015.5 requires). Since the Sowers declaration adds nothing of substance[4] to what was shown both by the declaration of respondent administratrix and by the settled statement of plaintiff's testimony, it is unnecessary to summarize the Texas document or to determine whether its unsworn recitals, since unobjected to, could be accorded evidentiary status. (See, *Estate of Wilson* (1953) 116 Cal.App.2d 523, 526 [253 P.2d 1011]; *Estate of Da Roza* (1947) 82 Cal.App.2d 550, 555-556 [186 P.2d 725]; *People* v. *Duffy* (1930) 110 Cal.App. 631, 635-636 [294 P. 496]; compare *Truslow* v. *Woodruff* (1967) 252 Cal.App.2d 158, 163-164 [60 Cal.Rptr. 304]; *People* v. *United Bonding Ins. Co.* (1966) 240 Cal.App.2d 895, 896, fn. 2 [50 Cal.Rptr. 198].)

 Plaintiff's contentions that the court did not admit the declaration of respondent administratrix into evidence and that the latter declaration was not included in the engrossed settled statement reflect a misconception concerning standard motion procedure. It was unnecessary for respondent to formally offer her declaration into evidence at the hearing, or for the court to formally receive it. Section 2009 of the Code of Civil Procedure provides that "[a]n affidavit may be used . . . upon a motion. . . ." Respondent's notice of motion stated that the motion would be based in part on respondent's declaration, which was filed (and presumably served) with the notice of motion. The engrossed settled statement summarized only the testimony and proceedings at the first day of the hearing. On the second day of that hearing the court stated it had read the parties' "affidavits" and plaintiff's counsel referred to the contents of respondent's declaration at that time[5] as well as in the points and authorities he filed on plaintiff's behalf in the trial court. Moreover, plaintiff specifically designated respondent's declaration as part of the clerk's transcript on appeal, and the transcript containing that declaration has been certified by the clerk pursuant to rule 8(a). Under these circumstances, respondent's declaration is deemed to be in evidence. (See, *Carvalho* v. *Lusardi* (1952) 114 Cal. App.2d 733, 734-735 [251 P.2d 37]; *Redsted* v. *Weiss* (1945) 71 Cal. App.2d 660, 665-666 [163 P.2d 105]; *Deary* v. *Shields* (1942) 54 Cal.

---

[4]The Sowers declaration in part alleges that "John F. Waller stated . . . a number of times during the years 1964, 1965, and 1966 and 1967 that he considered himself divorced from Charlotte V. Waller [plaintiff] and that under no circumstances would he ever live with her again." This recital is, at most, cumulative of the evidence that no reconciliation was effected and that John assumed plaintiff would obtain the final decree.

[5]Plaintiff's counsel stated, in substance, that plaintiff disputed the evidence in the declarations of respondent and Dorothy Sowers, but that "assuming all the evidence" in the declarations, this was not a proper case for a *nunc pro tunc* order.

App.2d 795, 797-798 [129 P.2d 935]; cf. *Estate of Wilson, supra,* 116 Cal.App.2d at pp. 527-528 and cases therein cited.) The averment in respondent's declaration that John F. Waller assumed that plaintiff would "enter" a final decree lends substantial support to the court's finding that "through inadvertance [*sic*], mistake and excusable neglect" on John's part no final decree was entered prior to his death. (See, *Nemer* v. *Nemer, supra,* 117 Cal.App.2d at p. 39; *Hull* v. *Hull* (1951) 102 Cal.App.2d 382, 384 [227 P.2d 546].)

### *Application of Civil Code Section 133*

 Plaintiff argues that section 133 may be applied only where there is an "overriding equity," which she insists will be found only where the granting of the motion will validate a subsequent marriage or establish the legitimacy of children. We reject the contention.

Although the Supreme Court has recognized that the Legislature, by enacting section 133, "intended to *emphasize* [italics ours] the retroactive effect of a *nunc pro tunc* order only in certain areas [i.e., to validate a subsequent marriage]," the court expressly reserved the question whether the statute was intended to serve other purposes. (*Adoption of Graham* (1962) 58 Cal.2d 899, 904 [27 Cal.Rptr. 163, 377 P.2d 275].)

The reservation of the *Graham* decision has in turn been recognized by the Courts of Appeal. In *Price* v. *Price* (1966) 242 Cal.App.2d 705, 709-710 [51 Cal.Rptr. 699], the court refused to limit section 133 to cases where a later marriage would be thereby validated, and said, "We see no reason why the law as stated in section 133 of the Civil Code should not apply to every situation which arises subsequent to the date of the *nunc pro tunc* divorce. It is inconceivable to us how a law of this kind could be held to apply to some situations and not to others. Generally speaking, a law enacted without qualification is necessarily universal in effect. Admittedly, this code section constitutes a statutory fiction, but upon its enactment it should be equally applicable to all situations, including, in our judgment, the present one [holding that the conclusive presumption of child legitimacy was not applicable after the *nunc pro tunc* date of the final decree]." (See also, *Berry* v. *Berry, supra,* 140 Cal.App.2d at p. 60, stating that a spouse had a vested right in community property acquired subsequent to the entry of the interlocutory decree and that such right could not be divested by entry of the final decree *nunc pro tunc* "without" a showing of mistake, negligence, or inadvertence.)

In *Kern* v. *Kern, supra,* 261 Cal.App.2d 325, there were no children to be legitimated and no subsequent marriage to be validated. Nevertheless, the appellate court upheld a *nunc pro tunc* final decree which antedated

the death of a mentally incompetent plaintiff wife and which was obtained on motion of the administrator of her estate on the ground that her conservator was inadvertent in failing to seek the final decree at an earlier time when such final judgment could have been entered.

But—plaintiff says—the effect of the court's order in the present case is to divest her of a right of inheritance. It has been said that "[w]hile section 133 of the Civil Code is to be liberally construed to effectuate its object, its operation may not destroy a vested right." (*Adoption of Graham, supra,* 58 Cal.2d at p. 904.) The statement from *Graham* must be read, however, in the light of the facts there presented. It was there held that parental relinquishments on file with the State Department of Social Welfare —valid when executed—could not be defeated at the behest of petitioners in an independent adoption proceeding by the expedient of *nunc pro tunc* entry of a final decree of divorce. A controlling element in the decision was the provision of Civil Code section 224m to the effect that the "relinquishment authorized by this section . . . is final and binding and may be rescinded only by the mutual consent of the adoption agency [which did not consent] and the parent or parents relinquishing the child." (*Id.* at p. 905.)

Unlike *Graham,* we are not dealing here with a right which the Legislature has declared may not be divested. (Civ. Code, § 224m.) We adhere, therefore, to the settled rule which authorized the court to enter the final decree herein antedating the death of defendant. (See, *Kern* v. *Kern, supra,* 261 Cal.App.2d at pp. 332-333; *Hamrick* v. *Hamrick* (1953) 119 Cal. App.2d 839 [260 P.2d 188]; *Hull* v. *Hull, supra,* 102 Cal.App.2d 382; *Estate of Hughes* (1947) 80 Cal.App.2d 550 [182 P.2d 253].) In each of the last-cited cases, "vested" rights of inheritance were necessarily or inferentially divested by the action of the court.

The appeal from the order granting respondent's motion for entry of the final decree of divorce *nunc pro tunc* is dismissed. The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.