Filed 6/1/26  O'Toole v. Haynes CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ALETHEA O'TOOLE, | B332472 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STRO02848) |
| v. | |
| DARRYL SCOTT HAYNES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jannet Perez Santiso, Judge.  Affirmed.

Alethea O'Toole, in propria persona, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

————————————————

## INTRODUCTION

Alethea O'Toole petitioned for a domestic violence restraining order (DVRO) against Darryl Haynes, which the trial court denied after it granted her a continuance and O'Toole failed to serve moving papers on Haynes. O'Toole appeals, arguing the trial court abused its discretion by failing to grant her an alternative method of service or a second continuance of the DVRO hearing, given the difficulty of personally serving Haynes. Haynes did not file a respondent's brief.[1] We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *O'Toole's Petition for a Domestic Violence Restraining Order*

O'Toole and Haynes previously dated. After that relationship ended, at a certain point the parties filed multiple legal actions against each other and each sought restraining orders against the other. This appeal is limited to the trial court's denial of O'Toole's petition for a DVRO.

On May 4, 2023, O'Toole filed a petition for a DVRO against Haynes, seeking protection for herself and her adult son Hunter. O'Toole's petition and attachments are absent from the record. The trial court issued a temporary restraining order on May 5, 2023 as to O'Toole, but found insufficient evidence to include Hunter as a protected party.

---

[1]　Where, as here, a respondent fails to file a respondent's brief, "the court may decide the appeal on the record, the opening brief, and any oral argument by the appellant." (Cal. Rules of Court, rule 8.220(a)(2).)

On May 30, 2023, the trial court held a hearing on O'Toole's petition, at which Haynes did not appear. O'Toole provided a declaration of due diligence by the sheriff's department, dated May 16, documenting three unsuccessful attempts to serve Haynes at his residence address earlier in May. The declaration stated: "possible private/personal service needed." O'Toole asked for a continuance and for an alternative method of service. She also stated it was going to be difficult to serve Haynes and that he had evaded service in the past.

The trial court denied O'Tooole's request for alternative service. The court granted a continuance of the hearing to June 23, and "admonished" O'Toole that if she did not serve Haynes before the next hearing date the court might dismiss the matter without prejudice.

On June 8, 2023, O'Toole filed a request to continue the hearing so that she could have more time to effectuate personal service on Haynes, alleging that Haynes had "evaded the sheriff summons service" on multiple occasions and had recently left the country. O'Toole attested that on May 31 she learned through social media that Haynes had boarded a plane on May 30 to vacation in London, England. O'Toole attached screen shots of social media posts allegedly reflecting Haynes's travel with his wife. O'Toole also attested that on May 31 she had received a vulgar and harassing letter by mail in Haynes's handwriting (signed from "Lucy") and attached the letter.

On June 14, O'Toole filed a declaration in support of an ex parte request for the court to order a permanent restraining order, based on Haynes's alleged continued harassment of her despite the temporary restraining order and his "history of intentionally eluding service of summons, making it difficult to

3

serve." O'Toole attached the letter she had received, as well as due diligence declarations from the sheriff's department in two other cases between the parties, reflecting six unsuccessful attempts to serve Haynes in February and March 2023.

On June 23, 2023, the trial court held the continued hearing, and the court found that no proof of service on Haynes had been filed. O'Toole testified she had hired a private server who had been unable to serve Haynes with notice of the DVRO hearing, but she provided no affidavit of due diligence or other showing of any attempts at private service or service by the sheriff's office since the May 30 hearing. O'Toole stated the private server was not available to come to court that day, O'Toole was not provided with a declaration of due diligence by the private server, and O'Toole did not know that a declaration of due diligence was needed. O'Toole further testified regarding her belief that Haynes had left the country and the harassing letter she had received. The court also reviewed O'Toole's declaration filed on June 14, which it treated as a supplemental declaration in support of her request for a permanent DVRO.

The court dismissed the petition for a DVRO without prejudice "for lack of prosecution," "[b]ased on [O'Toole]'s failure to serve moving papers," and it dissolved the temporary restraining order.

O'Toole timely appealed.

B. *Settled Statement Process*

Although a reporter was present for the May 30 and June 23 hearings, O'Toole elected to proceed by way of a settled

4

statement on appeal.[2] (See Cal. Rules of Court, rule 8.137(b)(1)(B) [an appellant with "an order waiving his or her court fees and costs" may elect "to use a settled statement as the record of the oral proceedings in the superior court without filing a motion"].)[3]

O'Toole filed a proposed settled statement on December 13, 2023. On August 13, 2024, the trial court ordered O'Toole to serve and file a modified proposed settled statement incorporating a set of modifications provided by the court. (See rule 8.137(f)(3)(B)(ii), (g)(1); *Marks v. Superior Court* (2002) 27 Cal.4th 176, 194.) O'Toole filed a second proposed settled statement on October 10, 2024, but the record does not include it. On January 28, 2025, the trial court again ordered that corrections were required, and it provided to O'Toole a "Court's Modified Settled Statement" substantially similar to the modifications it previously proposed. (See rule 8.137(f)(3)(B)(i), (g)(1).)

The trial court's modified settled statement described the May 30 hearing and sheriff's department declaration of due

---

[2] "The purpose of a settled statement is to provide the appellate court with an adequate record from which to determine contentions of error." (*In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1580.) Thus, a settled statement must contain "a statement of the points the appellant is raising on appeal" and a "condensed narrative of the oral proceedings," including "a concise factual summary of the evidence and the testimony of each witness relevant to the points that the appellant . . . raise[s] on appeal." (Cal. Rules of Court, rule 8.137(d).)

[3] Undesignated rule references are to the California Rules of Court.

diligence provided by O'Toole, and the court found that "[n]o evidence was presented that [Haynes] was evading service relative to this restraining order." The statement described the court's grant of "a continuance for service" as well as O'Toole's request for "alternate service," which it "denied . . . based upon the evidence and the information before the court."

The trial court's modified settled statement also summarized the June 23 hearing, stating the court reviewed O'Toole's declaration filed June 14 and received testimony from O'Toole as follows: "When the court inquired regarding the efforts to serve [Haynes] since the last hearing date of 5/30/23, [O'Toole] did not provide any evidence of further attempts by the Sheriff's Department to serve [Haynes]. Additionally, [O'Toole] indicated that she used a private server and that service had not been effectuated. [O'Toole] claimed that the private server was not available to come to court today, that [O'Toole] was not provided with a Declaration of Due Diligence by the private server and that [O'Toole] did not know that a Declaration of Due Diligence was needed although one was provided at the 5/30/23 hearing date. [O'Toole] further informed the court that [Haynes] had left the country, and that [O'Toole] did not know how long he would be gone. [O'Toole] further claimed that she received harassing mail from [Haynes]. [O'Toole] did not present declarations of due diligence, including any further attempts by the Sheriff's Department to serve [Haynes]."

The record does not reflect that O'Toole filed any proposed modifications or objections to the court's modified settled statement. (See rule 8.137(g)(2) [party may file proposed modifications or objections within 10 days after court's modified statement is served].) Thereafter, the trial court's modified

6

settled statement was not formally certified by the court as the certified settled statement before it was included in the clerk's transcript.  (See rule 8.137(g)(2), (h)(1) [judge must review the modified statement within 10 days after the time for filing proposed modifications or objections has expired, and "must promptly certify the statement" if no further modifications or corrections are necessary]; (h)(3) ["Upon certification of the statement . . . the certified statement must immediately be transmitted to the clerk for filing of the record . . . ."]; *Branger & Driard v. Chevalier* (1858) 9 Cal. 351, 352 ["The settled statement, until certified, is not record."]; *Potter v. Solk* (1958) 161 Cal.App.2d Supp. 870, 871-872 ["[t]he requirement of certification of the engrossed statement by the trial judge is mandatory"].)

On February 11, 2026, this Court on its own motion directed the trial court to certify the settled statement. On March 13, 2026, the trial court resubmitted the clerk's transcript, with a clerk's verification "that the Settled Statement has been certified by the trial court judge, as required by . . . rule 8.137(c)." Accordingly, "[w]e are bound by the contents of the engrossed settled statement."  (*Waller v. Waller* (1970) 3 Cal.App.3d 456, 464 (*Waller*).)[4]

---

[4]     The record as resubmitted does not contain a separate signed certification of the settled statement by the trial judge. However, O'Toole does not argue the trial court failed to properly certify the settled statement, and there is no record that O'Toole raised any objections to the trial court's second proposed modified settled statement, nor did she seek writ relief regarding any error in the settled statement process. (See *Waller, supra,* 3 Cal.App.3d 456, 464 [where no objection to the contents of

7

**DISCUSSION**

A. *Governing Law and Standard of Review*

Under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) (DVPA), a court may issue a protective order " ' "to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse." ' " (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225; see Fam. Code, § 6300.)[5]  A temporary DVRO may be issued on an ex parte basis without notice (§ 6320, subd. (a)), but a permanent restraining order may be issued only "after notice and a hearing" (§ 6345, subd. (a)).  The DVPA permits alternative methods of service—such as service by mail or by publication—only where "the court determines that, after diligent effort, the petitioner has been unable to accomplish personal service, and that there is reason to believe that the restrained party is evading service."  (§ 6340, subd. (a)(2)(A).)  A hearing on a request for a DVRO may be continued "on a showing of good cause" by either party or on the court's own motion. (§ 245, subd. (b); see *In re Marriage of Davila & Mejia,* at p. 228; see also rule 3.1332(c) ["The court may grant a continuance only

_____

engrossed settled statement appears of record, "we must assume that plaintiff made none"]; *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935-936 ["To preserve the issue of the denial [of a request for settled statement] for appeal, the appellant may seek writ review at the time of the denial, or raise the denial in the opening brief on appeal."].)

5       Undesignated statutory references are to the Family Code.

on an affirmative showing of good cause requiring the continuance"].)

"The denial of a restraining order under the DVPA is appealable." (*N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 601; Code Civ. Proc., § 904.1, subd. (a)(6).) "We review the grant or denial of a request for a DVRO for abuse of discretion." (*In re Marriage of Davila & Mejia, supra,* 29 Cal.App.5th at p. 226.) We likewise review the denial of a continuance for an abuse of discretion. (*In re Marriage of Tara & Robert D.* (2024) 99 Cal.App.5th 871, 881.) "We also review a trial judge's failure to consider evidence for abuse of discretion." (*Hatley v. Southard* (2023) 94 Cal.App.5th 579, 589.) Under the abuse of discretion standard, " '[t]he trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 146.) "We also review for substantial evidence the trial court's finding [whether] the petitioner made a diligent effort to locate and personally serve the respondent." (*Yu v. Pozniak-Rice* (2025) 112 Cal.App.5th 1135, 1143 (*Yu*) [construing "diligent effort" for service of a civil restraining order under Code of Civil Procedure section 527.6, subdivision (m)(2)].)[6]

---

[6]    Section 6340, subdivision (a)(2)(A) shares substantially similar language with Code of Civil Procedure section 527.6, subdivision (m)(2).  (Compare § 6340, subd. (a)(2)(A) ["If at the time of a hearing with respect to an order issued pursuant to this part based on an ex parte temporary restraining order, the court determines that, after diligent effort, the petitioner has been unable to accomplish personal service, and that there is reason to believe that the restrained party is evading service, the court

9

Where, as here, the plaintiff appeals from an order denying a request for a restraining order, the substantial evidence analysis has a different lens:  "The party seeking a restraining order bears the burden of establishing the circumstances justifying the order.  [Citations.]  ' "In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [Instead] the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law . . . ." ' " (*Jan F. v. Natalie F.* (2023) 96 Cal.App.5th 583, 593.)  " ' "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 566.)  Where the judgment is against the party with the burden of proof, " 'unless the [trial] court makes specific findings of fact in favor of the losing [party], we presume the [trial] court found the [losing party's] evidence lacks sufficient weight and

may permit an alternative method of service designed to give reasonable notice of the action to the respondent. . . ."] with Code Civ. Proc., § 527.6, subd. (m)(2) ["If the court determines at the hearing that, after a diligent effort, the petitioner has been unable to accomplish personal service, and that there is reason to believe that the respondent is evading service or cannot be located, then the court may specify another method of service that is reasonably calculated to give actual notice to the respondent and may prescribe the manner in which proof of service shall be made."].)

10

credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.' " (*Id.* at p. 567.)

B. *O'Toole Does Not Demonstrate that The Trial Court Abused Its Discretion*

O'Toole argues the trial court abused its discretion by failing to grant an alternative method of service or a second continuance, given the difficulty of personally serving Haynes, and that it did not consider the evidence O'Toole presented in her initial DVRO petition and in subsequent filings. Although it is unclear in the opening brief, O'Toole also appears to challenge the denial of the DVRO for failure to prosecute.

1. *Alternative method of service*

We first address O'Toole's argument the trial court should have granted her an alternative method of service. A petitioner seeking an alternative to personal service under section 6340, subdivision (a)(2)(A), must make a showing of a "diligent effort . . . to accomplish personal service" before the court may authorize service by another method. (§ 6340, subd. (a)(2)(A); see *Yu, supra,* 112 Cal.App.5th at p. 1144 [same, under Code Civ. Proc., § 527.6, subd. (m)(2)].)

At the May 30 hearing, the trial court denied O'Toole's request for alternative service, but it granted O'Toole a continuance to June 23 to attempt to serve Haynes. At the June 23 hearing, O'Toole stated she had hired a private server who was unable to serve Haynes. O'Toole, however, provided no documentary evidence or witness supporting her statement. That is, she did not provide any evidence beyond her statements

11

that she attempted to serve Haynes after the May 30 hearing, such as a declaration of due diligence from a private server or from the sheriff's department. Instead, O'Toole stated the private server was unable to appear that day and she did not know she was supposed to provide a declaration of due diligence (despite providing one at the May hearing). Although O'Toole represented that a process server tried to serve Haynes her testimony was not competent because she did not have personal knowledge of any specific attempts to serve Haynes by the process server. (§ 6340, subd. (a)(2)(A); see *Yu, supra,* 112 Cal.App.5th at p. 1144 [petitioner should support a request for alternative service "with declarations stating 'probative facts' . . . based on personal knowledge and demonstrating a thorough investigation designed to learn the respondent's whereabouts"].) Thus, O'Toole's testimony does not compel a finding that O'Toole made a "diligent effort" to serve Haynes after the May 30 hearing.

The other evidence O'Toole submitted was also insufficient to show a "diligent effort" to serve Haynes after being granted a continuance to do so. The May 16 declaration of due diligence by the sheriff's department documented attempts to serve Haynes at his residence address with notice of the May 30 hearing, not of the June 23 hearing. And the other due diligence reports from the sheriff's department also pre-dated the May 30 hearing and did not involve service attempts in this case, but were instead from two other cases between the parties. This evidence is not " ' " 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*In re Marriage of Diamond, supra,* 106 Cal.App.5th at p. 566.) O'Toole's showing thus does not compel a finding that

12

she made a diligent effort to personally serve Haynes.  Under the circumstances, the court was within its discretion to deny alternative service.

### 2.	*The request for a second continuance*

The trial court also did not abuse its discretion by not granting a second continuance of the DVRO hearing.  A DVRO may be continued if a party makes "a showing of good cause." (§ 245, subd. (b).)  "Such a continuance is discretionary rather than mandatory" (*N.M. v. W.K.* (2024) 100 Cal.App.5th 978, 983), and we "must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823).  "Circumstances that may indicate good cause" include "[a] party's excused inability to obtain essential . . . documents . . . despite diligent efforts."  (Cal. Rules of Court, rule 3.1332(c)(6).)  "In ruling on a motion or application for continuance, the court must consider all the facts and circumstances that are relevant to the determination," including "[w]hether there was any previous continuance" and "[t]he prejudice that parties . . . will suffer as a result of the continuance."  (*Id.*, rule 3.1332(d)(2), (5).)  "When, as here, '[a] motion for continuance is addressed to the sound discretion of the trial court,' we reverse if denial of a continuance denied the applicant a fair hearing."  (*N.M. v. W.K.,* at p. 983.)

Here, at the May 30 hearing, the trial court exercised its discretion to grant one initial continuance to June 23 due to O'Toole's inability to personally serve Haynes.  At that hearing, the court reviewed the sheriff's declaration of due diligence indicating private service might be needed, and the court warned

13

O'Toole that if she did not serve Haynes before the next hearing date the court might dismiss the matter without prejudice. The court observed that "[n]o evidence was presented that [Haynes] was evading service relative to this restraining order." As stated, at the June 23 hearing O'Toole did not provide any declaration of due diligence demonstrating she attempted to serve Haynes within the additional time the court granted. At that hearing, the court considered O'Toole's evidence and O'Toole's belief that Haynes was evading service, that he left the country on May 30, and that he sent her the letter signed "Lucy." However, O'Toole's " 'belief' [Haynes] was evading service was opinion, not evidence" (*Yu, supra,* 112 Cal.App.5th at p. 1145), and O'Toole was not deprived of a fair hearing to make her argument that Haynes was difficult to serve. The court was within its discretion to give her evidence limited weight and to decline a second continuance of the DVRO hearing, based on its conclusion O'Toole had not shown she used the previous continuance to make diligent efforts to serve Haynes.

3. *Failure to prosecute*

To the extent O'Toole challenges the denial of her DVRO petition for "failure to prosecute," the trial court was within its discretion to deny O'Toole's request given her failure to serve Haynes. A permanent DVRO may be issued only "after notice and a hearing." (§ 6345, subd. (a).) O'Toole's inability to serve Haynes with notice of the DVRO hearing precluded the issuance of a permanent DVRO, and, as discussed, the trial court did not abuse its discretion by declining to grant alternative service or an additional continuance. Under the circumstances, O'Toole cannot overcome the presumption of validity favoring the trial court's

14

order.  (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-610 ["[A] trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment."].)

We further note that O'Toole remains entitled to refile her request.  Because the trial court denied her DVRO petition without prejudice, O'Toole is not barred from refiling her petition, providing additional evidentiary support with her petition, or requesting alternative service under section 6340, subdivision (a)(2)(A), if future personal service attempts are unsuccessful. (See *Egelston v. State Personnel Bd.* (2025) 112 Cal.App.5th 1050, 1056 [" ' "The term 'without prejudice,' in its general adaptation, means that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another application as if no suit had ever been brought[;]" ' " accordingly, an "order of dismissal without prejudice does not constitute a final decision on the merits of [the plaintiff's] request for a DVRO"]; *Fleishbein v. Western Auto Supply Agency* (1937) 19 Cal.App.2d 424, 427 [dismissals without prejudice ordinarily "affect no right or remedy of the parties and [indicate] that there has been no decision of the case upon the merits," leaving the parties "free to litigate the issue as though the action had not been commenced"].)

## DISPOSITION

The order is affirmed.


MARTINEZ, P. J.

We concur:


SEGAL, J.


STONE, J.